PHYLLIS KISSINGER, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

25 N. W. 2d 829

FILED JANUARY 22, 1947.   No 32149.

*Lloyd E. Peterson* and *Betty Jean Peterson,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *C. S. Beck,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and ANKENY, District Judge.

CHAPPELL, J.

Plaintiff in error, hereinafter called defendant, was arrested by Nebraska City police officers and placed in the Otoe County Jail on January 12, 1945. Thereafter, on January 13, 1945, a complaint was filed in the county court by the county attorney, charging that on or about January 12, 1945, defendant "did then and there unlawfully operate a

motor vehicle upon the highways of said County and State while under the influence of alcoholic liquor * * *." A warrant was duly issued and delivered to the sheriff, which was returned and filed January 13, 1945, showing service on defendant "by reading the same to her, and now have her before this County Court." When defendant was brought before the court, whose jurisdiction is unquestioned, she pleaded guilty. Thereupon, within the purview of section 39-727, R. S. 1943, defendant was sentenced and adjudged to serve thirty days in the county jail and pay the costs of prosecution, her driver's license was revoked for a period of one year, and she was ordered not to drive any motor vehicle in the state for a period of one year from the date of her discharge from the county jail, where she was duly committed, until her sentence was served, and costs paid, or she was otherwise lawfully discharged.

On January 16, 1945, after defendant had commenced serving the sentence, she gave notice of appeal, whereupon bond was fixed, filed, and approved, and she was released from custody to appear before the district court on the first day of the next jury term. Transcript was duly filed in the district court, together with defendant's petition in error, praying for reversal and discharge. Therein, she claimed in substance that notwithstanding her plea of guilty, she was not in fact guilty and that the sentence of the county court was void as in violation of due process of law, because she was not advised of her constitutional rights before acceptance of her plea. The State answered, and upon trial, the district found against defendant, affirmed the judgment of the county court, and remanded the case thereto for execution of sentence. Motion for new trial was overruled, and defendant prosecuted error to this court.

Her assignments of error are, in substance, that the judgment of the district court is not sustained by the evidence and is contrary to law. It is argued that defendant's rights to appear and defend by counsel, to have a copy of the accusation, to have witnesses in her behalf, and to have a

jury trial, as provided by the Constitution of Nebraska, section 11, article I, were not intelligently and competently waived by her judicial confession of guilt, because prior thereto the county court did not advise her that such rights were existent. We find that under the circumstances, defendant's assignments cannot be sustained.

The record discloses that the transcript from the county court, which imports verity, was not only attached to and made a part of defendant's petition in error, but was also offered in evidence by her. It provided in part: "The said complaint was thereupon read to the said defendant, and the said defendant being advised by the Court of her constitutional rights, entered a plea of guilty as therein charged. Upon consideration whereof the Court finds the defendant guilty as charged in the said complaint; it is, therefore, Considered, Ordered and Adjudged * * *.", after which followed the sentence, in form and substance as specifically provided by statute. All of the proceedings in the county court were in strict conformity with sections 29-602, 29-609, and 29-513, R. S. 1943, the latter of which was construed and applied in Martin v. Sanford, 129 Neb. 212, 261 N. W. 136.

The record does not disclose that defendant ever formally asked to withdraw her plea of guilty either in the county court or the district court. However, the district court, without objection by the State, received evidence dehors the record of the county court in explanation of what actually did occur. In that connection, defendant was the only witness who testified in her behalf. She testified substantially that she was brought before the county court about noon on January 13, 1945, at which time the complaint was read to her and she pleaded guilty, without previously being advised by the court that she had the right to have counsel or have a jury trial, or call witnesses in her defense, or that she might be sent to jail. She also testified that she was never arrested previously, knew nothing about law or court procedure, and although admitting that she

had read or studied the Constitution of the United States, asserted that she was not familiar with her constitutional rights. At the time of the trial, she was twenty-four years of age, and had attended school through four months of the eleventh grade in high school, after which she married and became the mother of two children.

It is interesting and instructive to note that without objection the trial court asked defendant a few pertinent questions which she answered. That evidence is as follows: "Q. Mrs. Kissinger, you mean that you didn't understand what a plea of guilty was? A. Well, no, I didn't really. Guilty, I thought, was just telling the truth, and that was all that was to it; because I didn't know anything about the law, or anything. Q. Telling the truth about what? A. What happened. * * * Q. And you don't know what a plea of guilty or not guilty means? A. No, I never had any experience in that. Q. Didn't you know that when a person pleads guilty they confess everything they did, * * * and when they plead not guilty they mean that they are not going to admit anything? Didn't you know that? A. Sure, I know that, but I just—I know I pleaded guilty because they were down there. I couldn't have pled (sic) not guilty. Q. You couldn't have plead not guilty? A. Well, I could have."

The county judge testified for the State that the complaint was read to defendant, whereupon she was told by him that if she pleaded guilty it would be the duty of the court to impose a sentence, but if she pleaded not guilty the case would be set down for hearing at some future time and disposed of later, and that she had a right to have a lawyer if she wanted one. He did not say anything to her about a jury trial or tell her that she had a right to have witnesses in her behalf or inform her what the sentence could be or would be. The county sheriff and a newspaper reporter who were present during the proceedings verified the county judge's testimony, which was also supported by the transcript itself.

The record does not disclose that defendant ever asked for a copy of the complaint or requested permission to consult with or secure counsel or demanded a trial before her plea, but it discloses that before sentence was imposed she conferred with a lady in the courtroom, said to be her mother. There is no evidence from which it could be logically inferred that defendant suffered from any disability or was either held incommunicado, put in fear, misled, or ill-advised by the court or anyone else prior to her plea or during the proceedings in the county court.

From a reading of the record, we can only conclude that defendant was a competent, intelligent woman, who obviously understood the simple charge against her, and knew that she had a right to have a trial and appear and defend by counsel. It is evident that even after consultation with able counsel prior to and during these error proceedings, she still confessed her guilt in the district court. It appears to us that defendant truthfully judicially confessed her guilt in the county court, and chanced the judgment of the county court, but thereafter prosecuted error because the sentence was more onerous than she had anticipated. The question is whether or not, under the circumstances heretofore recited, this court should hold that defendant was unlawfully deprived of her constitutional rights, thereby voiding the sentence imposed.

In a recent opinion of the Supreme Court of the United States, Carter v. People of the State of Illinois, — U. S. —, 67 S. Ct. 216, 91 L. Ed. 157, it was said: "Neither the historic conception of Due Process nor the vitality it derives from progressive standards of justice denies a person the right to defend himself or to confess guilt. Under appropriate circumstances the Constitution requires that counsel be tendered; it does not require that under all circumstances counsel be forced upon a defendant. * * * A trial court may justifiably be convinced that a defendant knows what he is about when he pleads guilty and that he rightly believes that a trial is futile because a defense is wanting."

Those words could as well have been written in the case at bar, because they have a perfect application.

This State has no provision, statutory or constitutional, requiring the court to appoint, procure, or impose counsel upon a defendant in misdemeanor cases, and the due process clause of the Fourteenth Amendment to the Constitution of the United States does not require it. Betts v. Brady, 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595, ably supports that conclusion. In that case the court refused to hold that the due process clause of the Fourteenth Amendment embodied "an inexorable command that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel."

Defendant has cited no authority, judicial, statutory, or constitutional, requiring the court to inform a defendant what the ultimate consequences of a plea of guilty could or would be in a simple misdemeanor case, and we find no circumstances in the case at bar which could justify a finding that it should have been done to give validity to defendant's sentence.

It has long been the rule in this state that all of the rights guaranteed by section 11, article I, of the Constitution of Nebraska are personal privileges and not having been conferred from any consideration of public policy are not inalienable but may be insisted upon or abandoned at pleasure, and in practice are all ordinarily waived by a judicial confession of guilt. McCarty v. Hopkins, 61 Neb. 550, 85 N. W. 540; In re Application of Carper, Tesar v. Bowley, 144 Neb. 623, 14 N. W. 2d 225; Duggan v. Olson, 146 Neb. 248, 19 N. W. 2d 353.

The cases relied upon by defendant to sustain her contentions, are clearly distinguishable from the one at bar. They all involve capital crimes or felonies, and felonies of great magnitude at that, together with pleas of guilty thereto, under circumstances adjudged to be not only inconsistent with fundamental fairness and justice, but also clearly in violation of some statutory or constitutional right.

There are none of those elements in this case.

We conclude that defendant, by her judicial confession of guilt, lawfully waived all the constitutional rights guaranteed to her by section 11, article I, of the Constitution of Nebraska, and that the proceedings in the county court were not in violation of due process of law.

For the reasons heretofore stated, the judgment of the district court is affirmed.

AFFIRMED.