### WRIGHT v. JOHNSTON, Warden.
#### No. 28026.

District Court, N. D. California.
April 23, 1948.

Before William Denman U. S. Circuit Judge for the 9th Circuit.

688

See also, D.C., 74 F.Supp. 25.

DENMAN, Circuit Judge.

Wright has presented to me as circuit judge a petition for a writ of habeas corpus, alleging that his is in the custody of the above Warden, who is holding him under a commitment issued by the District Court of the United States for the Eastern District of Illinois on a judgment sentencing him for an aggregate of ten years of successive sentences and a fine of $10,000, for stealing $2.43 from a postoffice in Strasburg, Illinois, breaking and entering the postoffice and conspiracy with three other accused, tried with him, to commit the above offenses.

The petition alleges, and the Warden agrees, that a five year sentence imposed by the same court the same day as the above sentences and included in the commitment has been served as to its imprisonment period.[1]

The petition alleges that the ten year sentences were given after a trial set and had one day after his arraignment; that the court at arraignment appointed an attorney for both Wright and the three other accused; that the three others had given statements to the government officials accusing Wright of committing the crimes on which the trial so was set; that Wright's defense was an alibi to be proved by two witnesses whose names and addresses he gave the court in an affidavit on the morning of the trial and that the court denied a motion for a continuance to secure them, though he had had an attorney, so embarrassed, for less than a day to secure them; that Wright's attorney, so representing clients with such conflicting interests, moved for a segregation of Wright for a separate trial, which motion the court denied.

The petition further claims that Wright's trial, in which he was represented by an attorney so embarrassed, was with a denial of the right of effective assistance of counsel given him by the Sixth Amendment to the Constitution, and that the trial one day after arraignment and one day after he first had any assistance of counsel, and then such counsel, is a denial of the due process of law in violation of the Fifth Amendment.

An order to show cause was issued, issue joined and it was held that the petition stated a cause for the issuance of the writ. The writ was issued and served, return made setting forth the above commitment, the petition stipulated to be a traverse of the return, and hearing had.

At the hearing, it appeared from the record and authorities cited that Wright has made motions in the District Court of the United States for the Eastern District of Illinois respecting the judgment of conviction, long after the term of court in which it was entered. The parties agree that the facts are that these proceedings were not in the nature of coram nobis, and I so find. It was also there agreed that if the ten year sentences were invalid, Wright's petition for release should be granted.

Wright there stated he desired no counsel and would conduct his case propria persona. The Warden was represented by Assistant United States Attorney Joseph Karesh. Stipulated evidence was introduced and the

---

[1] This sentence succeeded Wright's service of a sentence in Joliet Penitentiary, Illinois.

case argued and submitted. Upon this evidence I make the following

### Findings of Fact.

Prior to the time of his arraignment, Wright, without counsel, had been confined in Joliet Penitentiary, Illinois, on a sentence for a state offense. On the 16th of September, 1930, he was taken to the United States District Court in Danville, Illinois, and arraigned with the three other defendants.

The judge there presiding deposes that Wright (a) had no attorney, and (b) had no funds to hire one, and (c) that he had no means of securing one, and I further so find.

None of the other three accused had counsel, and the court appointed an attorney then in the court room, one J. D. Allen, stipulated now to be deceased, to serve in that capacity for all of them. That judge deposes that he "directed the United States Attorney to give Mr. Allen full access to all of the file, disclosing all evidence against the defendants, and the United States Attorney complied with the request."

Though neither Wright nor any of the three had had counsel theretofore, the court nevertheless set the case for trial for September 17th, the next day after arraignment.

Allen left the court, went to the office of the United States attorney and there discovered that each of three of his clients had given statements in writing, each (a) charging Wright with the crimes for which he was to be tried the next day and also (b) confessing their own participancy in the crimes.

The unfortunate Allen, a reputable colored practitioner, thus found himself within a few hours of a trial with three clients accusing Wright, a fourth client, and the likelihood that his duty to Wright could oblige him to tell the jury that: "You must disregard the statements of my three other clients accusing Wright of the crime.

These are statements of dishonest men—scoundrels who have sought to charge an innocent man with participating in a crime which they alone committed. You cannot believe men of such character." At the same time, Mr. Allen might well be compelled to argue on behalf of the three that: "You must acquit these men because they are innocent, honorable, law-abiding men who could not possibly have done any of the violent and criminal things with which they are charged. They have pleaded not guilty, and you must believe them."

■ In the few remaining hours for the preparation of the several defenses of the four men, no reputable member of the legal profession could proceed with the case without the frustating knowledge he was violating its primary canon—detachment of interest. Conscientious counsel, as Allen is shown to be, so profoundly embarrassed, was not qualified to give efficient representation to any of his clients.

To add to Attorney Allen's confusion and perturbation of mind, he learned from Wright that his defense was an alibi to be established by two witnesses whose names and addresses in Decatur, Illinois, he was given. All this appeared on a statement given by Wright to the investigating officers and in possession of the prosecuting attorney when Wright was arraigned. Allen thus had to prepare the cases of three of his clients on the three serious crimes charged and to seek to make some overnight contact with Wright's alibi witnesses at the addresses given. Decatur, the town of their residence, is 73 miles from Danville, the place of the trial.

In this situation, Allen waited till the next morning when the trial began, when he made a motion for a continuance as to Wright to have an opportunity to seek his witnesses for his only and, if true, his sufficient defense. For this motion he had prepared an affidavit signed by Wright setting forth the facts.[2]

---

[2] "Tuck Wright, one of the above named defendant, makes oath and says that he cannot safely proceed to trial of this cause at the present term of this court on account of the absence of one Glen Rommel and one Mary Rommel both of whom are material witnesses for the defendant in said cause, and whose residence is 713 South Oakland Court, Decatur, Illinois. That this affiant expects to prove by said witnesses, Glen Rommel, and Mary Rommel, the following matters, all of which are material to the issues involved in said cause: to-wit:

The court denied this motion for a continuance. On this, the presiding judge later deposed: "The motion for continuance was denied because I thought that no legal ground for continuance existed. The affidavit disclosed that defendant was evidently aware of the indictment against him as he said that he had attempted to write to two witnesses, but that the authorities at the State Penitentiary did not let his letters go out, but he did not show that from the time he acquired knowledge of the indictment up until the time of the trial, he made any other effort or attempt to get in contact with witnesses or arrange for their presence, or subpoena them. He consulted no lawyer; he wrote no lawyer. He did not write the Judge of the United States Attorney, but waited until the time of his trial, and then made an application for continuance. I believed he had not shown due diligence. If I erred, it was because I believed that fact."

With the case not at issue till arraignment, Wright could not know before arraignment the date the trial would be set. It was not till arraignment that the federal trial judge could perform his obligation to advise Wright of his right to counsel to prepare his defense.

To meet the situation of the conflict of interest between his three other clients and Wright, Attorney Allen moved for a severance as to Wright, Wright's affidavit having stated: "This affiant further says that he is informed and believes that the issues involved in this cause will be controverted, and that the evidence relating to such issues will be highly conflicting, as introduced by the respective parties." This the court denied, the judge later deposing that: "As to the motion for severance, I thought that inasmuch as these defendants had been indicted together, as co-defendants, inasmuch as they were charged with conspiracy jointly, the Government should not be put to the expense of more than one trial before one jury. I believed that I could adequately *protect the rights of each defendant* by my charge to the jury, and this I attempted to do, and, in my discretion, therefore I denied the motion." (Emphasis supplied)

Attorney Allen made no further motion to relieve himself of his dual and conflicting representation, and on September 17th the trial was commenced.

At the trial, what had appeared in the affidavit for severance was further confirmed. The prosecution introduced the statements of Allen's three other clients accusing Wright of the three crimes and also confessing their own guilt. Also was introduced Wright's statement showing his claim of alibi and the names and addresses of his witnesses. The two witnesses to prove the alibi were not procured and the prejudicial inference necessarily arose in the jurors' minds that his failure to produce such clearly exculpating testimony meant there was no such testimony.

As to the statements of the three co-defendants charging Wright with the crimes and also confessing their own participancy therein, the judge deposes that he charged the jury that "no confession was binding on any person other than the one who made it, and that it was not to be considered as evi-

---

That this affiant was not in Strasburg, Illinois, on the 9th day of April, 1930, when the Post Office of the United States at said place was burglarized; that this affiant was severely injured and was in the City of Decatur under the care of one Dr. McGill, and was not at or near the scene of the supposed crime; that all the matters and things which the defendant expects to prove by the said Glen Rommel and Mary Rommel are true.

" * * * This affiant further says that he is informed and believes that the issues involved in this cause will be controverted, and that the evidence relating to such issues will be highly conflicting, as introduced by the respective parties, and that he knows of no other person or persons than the said Glen Rommel and Mary Rommel by whom he can so fully prove the above matters set forth, And this affiant further says that he expects to and believes that he will be able to procure the attendance and testimony of the said Glen Rommel and Mary Rommel at the next term of this Court.

"And this affiant further says that the said Glen Rommel and Mary Rommel are not absent by the procurement, connivance or consent of this affiant, either directly or indirectly, and that this application is not made for delay, but that justice may be done.

"[Signed] Cecil Wright Affiant."

dence against any other defendant," and I further find that he so charged the jury.

There was evidence other than the statements sufficient for a verdict of guilty against Wright.

The jury's verdict of the guilt of Wright and of the three other defendants was rendered that day, and immediately thereupon Wright was given the sentences here in question.

### Conclusions of Law

■ From the above findings of fact as to the conflicting interest represented by Attorney Allen, I conclude that Wright was denied the right to the efficient assistance of counsel given him by the Sixth Amendment, and that with a counsel so embarrassed, compelling him to undertake the conflicting defenses in less than 24 hours, and in the same time to seek and procure Wright's witnesses, is a denial to Wright of the due process of law, to which he is entitled under the Fifth Amendment.

### Opinion.

The proof of Wright's claims of alibi by the named witnesses at the given, or even later discovered addresses if they had moved, would be a complete defense to the crimes charged against him. Obviously, counsel Allen, representing the conflicting interests of his three other clients, was totally incapable in the few hours before the following morning of the trial to search for and procure their presence, and at the same time prepare the defense of his other clients.

■ The trial judge decided that Wright had forfeited his right to time to have counsel singly devoted to his interest to procure his witnesses, and that he must go to trial the next day without such witnesses. The reasons he gives constitute a grossly unjust judicial absurdity. Joliet Penitentiary, in which Wright was confined until he was arraigned, is about 100 miles from the district court at Danville. The judge's subsequent deposition states that Wright had no counsel, had no "funds" to procure one and no "means" to procure one. He then states as his reason why Wright, before arraignment, that is, before the case was at issue and when he could not possibly have known the date of trial, had forfeited his right to secure witnesses with the aid of counsel, that "The affidavit disclosed that defendant was evidently aware of the indictment against him as he said that he had attempted to write to two witnesses, but that the authorities at the State Penitentiary did not let his letters go out, but he did not show that from the time he acquired knowledge of the indictment up until the time of the trial, he made any other effort or attempt to get in contact with witnesses or arrange for their presence, or subpoena them. He consulted no lawyer; he wrote no lawyer. He did not write the Judge or the United States Attorney, but waited until the time of his trial, and then made an application for continuance. I believed he had not shown due diligence. If I erred, it was because I believed that fact."

It is an injustice for the court to find Wright without counsel and without money or means to procure one and then give as one of the reasons for the forfeiture of his due process right to procure witnesses that "He consulted no lawyer; he wrote no lawyer."

It is a further injustice to assume from Wright's affidavit as a further fact for forfeiting his right to secure his witnesses that he "did not write the United States Attorney" concerning his alibi. The fact is that the prosecuting attorney had Wright's signed statement stating the alibi defense and the names and addresses of his witnesses, a fact disclosed to the judge at the beginning of the trial.

The only ground left to justify the forfeiture of Wright's right to have his witnesses found and produced is that he did not write the judge about it, that is, from a prison which the judge states prevented him from writing directly to the witnesses who, he claimed, would establish his innocence. The petitioner in Johnson v. Zerbst, 304 U.S. 458, 461, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357, also in prison, did not communicate with the trial judge, yet his petition was granted.

In this situation, I hold that Wright, a layman, did not forfeit his right to a counsel singly devoted to his defense, with sufficient time after the case became at issue by arraignment to procure his witnesses. In this I am following the decision of the

692

tenth circuit in Walleck v. Hudspeth, 128 F.2d 343, a habeas corpus proceeding where the prisoner was granted the· writ and returned for a new trial on facts essentially like those here.

In Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61, a habeas corpus proceeding, the writ was held to be sustainable where it be shown "that no *effective* assistance of counsel was furnished *in the critical time between the plea of not guilty and the calling of the jury.*" (Emphasis supplied) Id., at page 278 of 326 U.S., at page 120 of 66 S.Ct. There counsel was appointed on the day of trial and no continuance granted. It is no distinction that here the professionally hamstrung Allen was appointed the day before, with the witnesses he was to procure in a town 73 miles away and he required, at the same time, to prepare the defense of the three others.

█ The trial judge contends that his conduct, if wrongful, is mere error. Of course, Allen could have appealed, but so Hawk's attorney could have appealed but did not. Nevertheless, the Hawk case holds such claimed fundamental error denying constitutional rights may be adjudicated in a habeas corpus proceeding.

In the habeas corpus proceeding of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, 146 A.L.R. 357, the court held that as soon as the accused is deprived of counsel, the court loses jurisdiction to proceed with the case, stating: "If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court— as the Sixth Amendment requires—by providing counsel for an accused who is unable ·to obtain counsel,. who has not intelligently ·waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not .complied with, the court no longer has jurisdiction to proceed. The judgment of . conviction pronounced by a court without jurisdiction is void, and one imprisoned

thereunder may obtain release by habeas corpus."

Citing the Zerbst case, the Supreme Court in Glasser v. United States, 315 U.S. 60, states at page 70, 62 S.Ct. 457, at page 464, 86 L.Ed. 680: "Even as we have held that the right to the assistance of counsel is so fundamental that the denial by a state court of a reasonable time to allow the selection of counsel of one's own choosing, and the failure of that court to make an effective appointment of counsel, may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, so are we clear that the 'Assistance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired."

In that case, Glasser, an attorney, indicted, as was Wright, for conspiracy, had another attorney to represent him. The court appointed that attorney to represent a co-conspirator having an interest opposed to Glasser's. As with Wright, Glasser did not himself object. There was not, as here, a motion to segregate Glasser's trial. In that situation, the court, at page 71 of 315 U.S., at page 465 of 62 S.Ct., stated: "The court made no effort to reascertain Glasser's attitude or wishes. Under these circumstances to hold that Glasser freely, albeit tacitly, acquiesced in the appointment of Stewart is to do violence to reality and *to condone a dangerous laxity on the part of the trial court in the discharge of its duty to preserve the fundamental rights of an accused.*" (Emphasis supplied)

Concerning the effect in a conspiracy trial of appointing one attorney for two persons of diverse interests, the court's condemnation states, 315 U.S. at page 75, 62 S.Ct. at page 467:

"To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart [Glasser's attorney] as counsel for Kretske is at once

difficult and unnecessary. *The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.* Cf. Snyder v. Massachusetts, 291, U.S. 97, 116, 54 S.Ct. 330, 336, 78 L.Ed. 674, 90 A.L.R. 575; Tumey v. Ohio, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749, 50 A.L.R. 1243; Patton v. United States, 281 U.S. 276, 292, 50 S.Ct. 253, 256, 74 L.Ed. 854, 70 A.L.R. 263; And see McCandless v. United States, 298 U.S. 342, 347, 56 S.Ct. 764, 766, 80 L. Ed. 1205. *Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.* In conspiracy cases, where the liberal rules of evidence and the wide latitude accorded the prosecution may, and sometimes do, operate unfairly against an individual defendant, it is especially important that he be given the benefit of the undivided assistance of his counsel without the court's becoming a party to encumbering that assistance. Here the court was advised of the possibility that conflicting interests might arise which would diminish Stewart's usefulness to Glasser. Nevertheless Stewart was appointed as Kretske's counsel. Our examination of the record leads to the conclusion that Stewart's representation of Glasser was not as effective as it might have been if the appointment had not been made. We hold that the court thereby denied Glasser his right to have the effective assistance of counsel, guaranteed by the Sixth Amendment. This error requires that the verdict be set aside and a new trial ordered as to Glasser."

■■ No divergence of interest more clearly could have been "brought home to the court" than did the inculpatory statements of Attorney Allen's three other clients. At the moment of their introduction in evidence, Allen becomes disqualified as Wright's attorney and he, in effect, had

none. Then, if not before, the court lost jurisdiction to proceed as stated in Johnson v. Zerbst, supra. The trial judge's statement that he "thought that * * * inasmuch as they were charged with conspiracy jointly, the government *should not be put to the expense of more than one trial* before one jury" (emphasis supplied), in defiance of the Glasser case, is typical of the court's attitude. "Expense" is no factor in determining the accused's right of counsel.

■ So, also, is the statement that he "could adequately protect the rights of each defendant by my charge to the jury." No charge to the jury could relieve Attorney Allen of his embarrassment when he learned a few hours before trial of his conflicting professional duties and the impossibility, before the next morning, of obtaining the witnesses to testify to Wright's alibi. This is even assuming that the court had instructed the jury clearly, not only that the confession portions of the three statements were to be disregarded, but also the statements implicating Wright.

■ It is my opinion that the court lost jurisdiction to proceed on the denial of the motion for a continuance. If it had not lost jurisdiction then, it was lost as soon as the conflicting statements were introduced into evidence and it became apparent that either the motion for a severance should be granted, or that a separate attorney should be appointed for Wright with a continuance adequate for such separate attorney to prepare his case.

### Further Findings of Fact.

I further find that after June 21, 1947, when Wright had served the imprisonment portion of a sentence of five years to Alcatraz Penitentiary, on January 8, 1948, Wright filed with the United States District Court of the Northern District of California, in case No. 27833–H, the same petition as here filed. That court denied the petition and discharged an order to show cause, not on the merits of the petition. Instead it stated: "Petition for Writ of Habeas Corpus having been briefed and submitted for decision, and it being noted by the court that the issues raised by the petition have

been decided adversely to petitioner in previous actions before this court." [3]

I further find that prior thereto Wright filed in the district court of the Northern District of California two other petitions, that is, both filed prior to his service of the above five year sentence, when the court had no power to consider them.

In the first of these, case No. 23,647–S, on a similar petition filed on March 28, 1942, that court found that the imprisonment portion of the above five year sentence had not been served. Then, having found itself without jurisdiction to adjudicate the validity of the instant sentence, on the same facts as here presented that court purported to make findings relative to its validity. In them is no finding on the ultimate fact of the diverse interest represented by Attorney Allen, and no finding of probative facts remotely suggesting the presence of this issue. Nevertheless, the court stated as a "conclusion of law" that "petitioner was not denied the right of assistance of counsel at any time during the course of the proceedings, and was there duly represented by counsel."

Succeeding this, the same petition was filed in Case 23546–R on September 18, 1944. It showed on its face the pendency of the above five year sentence. Relief was denied on the ground that facts alleged in the petition "are insufficient on their face to justify the discharge of the petitioner." That case was appealed and decided on June 18, 1945. 149 F.2d 648. Within a month prior thereto, that circuit court decided the case of McDonald v. Johnston, 9 Cir., 149 F.2d 768, in which it held at page 769, concerning its power to adjudicate non-validity of a sentence where another is being served: "The federal courts have no power in a habeas corpus proceeding, once it is shown that in any event the petitioner is presently held legally by his jailor, to determine such questions as the future termination of his sentence. McNally v. Hill, 293 U.S. 131, 138 et seq., 55 S.Ct. 24, 79 L. Ed. 238; De Maurez v. Squire, 9 Cir., 121. F.2d 960, 962 and cases cited."

Though without power to determine the merits of Wright's two contentions respecting. his ten year sentence, that court, in a casual per curiam of a single paragraph based upon the decision in the first case 23647, affirmed the district court. Wright v. Johnston, 9 Cir., 149 F.2d 648. The opinion does not mention the issue of the conflicting interests of Allen's clients nor the single day in which Allen was to prepare the defenses of his three other clients and procure the witnesses to prove Wright's alibi.

I further find that it is not true that nine petitions presenting these issues have been filed. There are but three, the one since the imprisonment portion of the five year sentence was served and the two others above stated, decided without power to consider such issues. Wright filed other petitions, but they concern entirely different issues.

### Further Conclusions of Law.

From these findings concerning these three cases, I conclude that Wright has never been tried in this circuit in a manner legally considering or disposing of his contentions that he has been denied the efficient assistance of counsel or given any time after arraignment to prepare his defense. In this connection it should be noted that in Hawk v. Olson, 326 U.S. 271, at page 272, 66 S.Ct. 116, 90 L.Ed. 61, Hawk had applied for and been refused the writ, three times by the federal courts and at least once by a state court.

The unfortunate result here arises from the overburdening of my brethren within reach of Alcatraz Penitentiary by the flood of petitions without merit and often perjured. It is only because of the exceptional circumstances here shown and my prior familiarity with his contentions prematurely made In re Wright, D.C., 51 F.Supp. 639, 643, that I have made an exception to the practice stated in my opinion in Bowen v. Johnson, D.C., 55 F.Supp. 340, and entertained Wright's petition.

### Order.

It is. ordered that Wright's petition is granted . and that the Warden deliver

[3] That is to say, though none of the courts had the power to determine the issue of the validity of the ten year sentence, the doctrine of res judicata by their decisions was applied in this habeas corpus proceeding.

Wright to the United States District Court for the Eastern District of Illinois for appropriate proceedings therein. It is further ordered that such delivery shall be delayed for ten days. If the Warden shall not appeal within that time, the Warden shall forthwith so deliver Wright to that court.