HENRY HAWK, PLAINTIFF IN ERROR, v. STATE OF
NEBRASKA, DEFENDANT IN ERROR.
39 N. W. 2d 561

Filed November 10, 1949.   No. 32587.

*Matthews, Kelley, Matthews & Delehant,* for plaintiff in error.

*James H. Anderson,* Attorney General, *Clarence S. Beck, Robert A. Nelson, James J. Fitzgerald,* and *Joseph P. Inserra,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a proceeding in error coram nobis begun in the district court for Douglas County to vacate a judgment of conviction of Henry Hawk, and to secure for him a retrial. The district court denied the writ. From the order of denial and the overruling of the motion for new trial, this proceeding in error was instituted.

The principal assignments of error relied upon by the petitioner are: (1) The court erred in failing to find

that the petitioner was, when originally tried and convicted of murder in the first degree, denied his constitutional right to be represented by competent counsel; (2) that the petitioner was denied his constitutional right to have reasonable time to confer with counsel, to examine the charge against him, to procure and subpoena witnesses, to examine the record of the preliminary hearing, and for counsel of record in his behalf to adequately and properly prepare his defense; (3) the court erred in holding that the petitioner was not prevented from prosecuting the writ of error to this court in the original case; and (4) in consideration of the foregoing assignments of error, the petitioner was denied due process of law as provided for by the Fourteenth Amendment to the Constitution of the United States, and denied due process of law as provided for by Article I, section 3, of the Constitution of the State of Nebraska.

At the outset we deem it appropriate to first make the legal distinction between a writ of error and a writ of error coram nobis, which should be borne in mind in the determination of this proceeding in error.

The writ of error is brought for a supposed error in law apparent on the record, and takes the case to a higher tribunal where the question is to be decided and the judgment, sentence, or decree is to be affirmed, modified, or reversed, while the writ of error coram nobis is brought for an alleged error in fact not appearing on the record, and lies to the same court in order that it may correct the error, which it is presumed would not have been committed had the fact in the first instance been brought to its notice. See 3 Am. Jur., Appeal and Error, § 1276, p. 766.

The common-law writ of error coram nobis is not a substitute for the statutory remedy of a writ of error under the Nebraska criminal procedure. See, Carlsen v. State, 129 Neb. 84, 261 N. W. 339, certiorari denied, 293 U. S. 607, 55 S. Ct. 123, 79 L. Ed. 698; Newcomb v. State, 129 Neb. 69, 261 N. W. 348; Swanson v. State, 148

Neb. 155, 26 N. W. 2d 595, certiorari denied, 331 U. S. 863, 67 S. Ct. 1759, 91 L. Ed. 1869.

The purpose of the writ of error coram nobis should be noted. The writ of error coram nobis is to enable the court to recall some adjudication, made while some fact existed which, if before the court, would have prevented rendition of the judgment, and which, through no fault of the party, was not presented. See Swanson v. State, *supra.*

The common-law writ of error coram nobis to bring into the record facts which were unknown to the defendant at the time of trial through no lack of reasonable diligence on his part, which, if known at the time of the trial, would have resulted in a different judgment, exists in this state under section 49-101, Comp. St. 1929, now section 49-101, R. S. 1943. See Carlsen v. State, *supra.*

Where the facts alleged are known to the applicant before or during the progress of the trial, or could have been known by the exercise of reasonable diligence, the writ must be denied. See, Swanson v. State, *supra;* Dobbs v. State, 63 Kan. 321, 65 P. 658; 24 C. J. S., Criminal Law, § 1606 (6), p. 154.

The purpose of the writ of error coram nobis is not, and never was, to permit a defendant to retry his case again and again, but, as pointed out in the previously cited authorities, in certain cases it provides a corrective judicial process that the Constitution guarantees shall not be denied. See, Swanson v. State, *supra;* Carlsen v. State, *supra.*

In considering the writ of error coram nobis the court will take cognizance of and consider the entire record of the original trial. See State ex rel. Cutsinger v. Spencer, 219 Ind. 148, 41 N. E. 2d 601.

The proceedings for the writ of error coram nobis are civil in character. See, Newcomb v. State, *supra;* 24 C. J. S., Criminal Law, § 1606, p. 144.

The petitioner for a writ of error coram nobis carries

the burden of proof in a collateral attack on a judgment which he seeks to have declared a nullity. See, Hawk v. Olson, 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61; Williams v. Kaiser, 323 U. S. 471, 65 S. Ct. 363, 89 L. Ed. 398; Wright v. Johnston, 77 F. Supp. 687.

With the foregoing authorities in mind we proceed to the petitioner's assignments of error heretofore designated Nos. 1, 2, and 3.

In connection with the aforesaid assignments of error the following legal fundamentals should be noted: Article I, section 11, of the Constitution of Nebraska provides: "In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel, to demand the nature and cause of accusation, and to have a copy thereof; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

Section 29-1803, R. S. 1943, provides for the assignment of counsel for an accused charged with a capital offense or an offense punishable by imprisonment in the penitentiary, and for counsel to have access to the prisoner at all reasonable hours.

It has long been the rule in this state that all of the rights guaranteed by Article I, section 11, of the Constitution of Nebraska are personal privileges and not having been conferred from any consideration of public policy are not inalienable but may be insisted upon or abandoned at pleasure. See, McCarty v. Hopkins, 61 Neb. 550, 85 N. W. 540; In re Application of Carper, 144 Neb. 623, 14 N. W. 2d 225; Duggan v. Olson, 146 Neb. 248, 19 N. W. 2d 353, certiorari denied, 327 U. S. 790, 66 S. Ct. 803, 90 L. Ed. 1016; Kissinger v. State, 147 Neb. 983, 25 N. W. 2d 829.

The record discloses that on April 19, 1935, a complaint was filed in the municipal court of the city of Omaha, Douglas County, Nebraska, containing two

counts, the first of which charged petitioner with first degree murder while attempting to rob one Isadore Perelman on or about the 28th day of February 1934. The second count charged first degree murder on the part of the petitioner by deliberate, premeditated malice by shooting Isadore Perelman with a revolver and as a result thereof he died on March 1, 1934. Since December 10, 1934, the petitioner had been a prisoner in the federal penitentiary at Leavenworth, Kansas, having been committed by the United States District Court at Omaha, Nebraska, for the violation of the National Motor Vehicle Theft Act.

On January 30, 1936, the petitioner, then being a prisoner at the Leavenworth prison, sent a letter to A. C. Anderson, chief of detectives of Omaha, referring to an interview he had had with Anderson on a previous occasion. In this letter the petitioner requested a certified copy of the information filed against him in the district court for Douglas County, Nebraska, and then stated: "* * * before I consent to return to Omaha for trial, you must understand that If I do return to Omaha, That it must be of my own volition, For there is no law under the sun that you could or the State of Nebraska lawfully extradite me as a fugstive (sic) from Justice. First—I am not guilty of the charge and if and when I agree volintary (sic) to return to Nebraska, I will expect an early trial by Jury, Now if you or the agents of the State of Nebraska, meet the above by a written agreement, of which I will approve, you may come down and let me see your Authority or color of law under which you are acting and if agreeable, I will return in custody of federal officers but in no way am I to wave (sic) my constitutional rights, * * *." With a postscript "Please Keep this letter until after my trial."

It will be observed by the foregoing letter that on January 30, 1936, the petitioner was well aware of the nature of the charges filed against him as shown by the

complaint, and in fact sought to dictate the terms by which he would appear and answer the same.

On February 11, 1936, the petitioner was moved from the federal prison at Leavenworth, Kansas, to Douglas County, Nebraska, pursuant to a writ of habeas corpus ad prosequendum, and was taken to the central police station in Omaha where a preliminary hearing was held about 2 o'clock that afternoon. The complaint was read to the petitioner and he entered his plea of not guilty. He testified he requested a continuance for the purpose of procuring counsel.

The county attorney at that time testified that the petitioner made no request for counsel at the preliminary hearing, but that he did orally move to quash the complaint on the ground that he was illegally brought into the state to plead to the charge. He also moved the court to require the county attorney to elect upon which charge of the complaint he would proceed to prosecute, and demurred orally to the complaint on the ground it did not state a crime. These motions and the demurrer were overruled. The petitioner denies he made any such motions and demurrer.

At the preliminary hearing the petitioner cross-examined witnesses, interposed objections to testimony, made a requirement that the chief of detectives testify, and participated generally in the hearing. At the conclusion of the hearing the petitioner was bound over to the district court for trial. At that time he requested the county attorney to send him a transcript of the testimony taken at the hearing, which he received about March 2, 1936. The petitioner further testified that he was assisted by other inmates of the Leavenworth prison in analyzing the transcript of evidence to determine whether or not the same was sufficient to convict him of the charges filed against him.

The foregoing is set forth to disclose the petitioner's acquaintance and knowledge of criminal matters and procedure, which he denies, and which is of importance

in determining this proceeding in error as will appear later in the opinion.

The petitioner contends that there was no medical evidence adduced at the preliminary hearing to show the death of Isadore Perelman or of any other person, and as a consequence thereof he was bound over to the district court on insufficient evidence. The record discloses sufficient and adequate medical evidence was taken at the preliminary hearing to show the death of Isadore Perelman as being caused by a bullet fired from a revolver. The petitioner's contention in such respect is not a proper subject to be determined in a proceeding for writ of error coram nobis.

In any event, a preliminary hearing before a magistrate is not a criminal prosecution or trial within the meaning of Article I, section 11, of the Constitution. See, Roberts v. State, 145 Neb. 658, 17 N. W. 2d 666; In re Application of Rozgall, 147 Neb. 260, 23 N. W. 2d 85.

After the preliminary hearing the petitioner was returned to the federal penitentiary at Leavenworth, Kansas.

On February 17, 1936, the information was filed in the district court, containing the charges in the same statutory language as the complaint.

Section 29-1802, R. S. 1943, provides for the service of indictment upon the accused. Section 29-1604, R. S. 1943, makes section 29-1802, R. S. 1943, applicable to informations. In compliance with said sections the petitioner was served with a copy of the information by the warden of the Leavenworth penitentiary on February 20, 1936. He was not called upon to answer to the information before one day had elapsed from the time he was served with it. His trial was set for March 16, 1936. It is evident, therefore, the petitioner was informed of the charges filed against him well in advance of trial.

On March 1, 1936, the petitioner wrote a letter to the clerk of the district court for Douglas County, wherein

he informed the clerk that he had sent a list of the witnesses he desired to the presiding judge of the criminal court, and wanted to know if the judge had handed the clerk the list. He also set forth the names of other witnesses whom he wished to have subpoenaed. In this letter he asked the clerk to inform the court that he requested an early trial. On March 6, 1936, the county attorney's office, by letter to the petitioner, advised him: "In accordance with your request, we are setting this case for early trial, and have selected March 16th as the date of your trial. * * * The last time you were in Omaha you advised that you would secure an attorney to represent you in this matter. To date, we have received no communication from any attorney, and are wondering what steps you have taken to obtain legal assistance. If you are unable to procure counsel, the court will appoint the Public Defender to represent you in this matter. The writer suggests that you attempt to secure counsel for the protection of your legal interests."

On March 9, 1936, the public defender was appointed to defend the petitioner. He immediately procured the files and examined the information, awaiting the arrival of the petitioner for trial. On March 11, 1936, the petitioner and his appointed counsel were served with notice that additional names would be endorsed on the back of the information by the State.

It appears that the petitioner arrived at the Douglas County jail shortly after 4 p. m., March 15, 1936. The petitioner testified that at about 11:15 p. m., the night of March 15, 1936, the public defender and his assistant called on him in the jailer's office. They introduced themselves. He had met the public defender some years previous when the public defender, at that time in the general practice of law, assisted in defending the petitioner on a criminal charge. He further testified that the public defender endeavored to persuade him to plead guilty, and indicated that the evidence was sufficient to convict him and in the event of trial and con-

viction he would probably get the death sentence. When the petitioner stated that he would not plead guilty the public defender told him he was going to wash his hands of the affair and would have nothing to do with the case.

The public defender's testimony is in conflict with the petitioner's in such respect. He testified to a conference had with the petitioner shortly after 7 p. m., on March 15, 1936, wherein he informed the petitioner that he and his assistant were to defend him at his trial. The petitioner was cordial at the time and told them not to bother, he was going to handle his own case, and refused to discuss the case or his defense with them. Nothing was said with reference to pleading guilty, or about the death sentence. The public defender's testimony was corroborated by his assistant.

The petitioner further testified that on the morning of the trial, March 16, 1936, he was brought into the district court, the information was read to him, and he entered his plea of not guilty. He did not remember the public defender or his assistant being present, and no other counsel was there to represent him. He orally requested a 24-hour continuance which was refused. When two or three jurymen were called to the jury box the public defender appeared, and one Mr. Baldwin, a lawyer whom he knew but did not employ, came in and sat with him on his side of the counsel table.

The morning of the trial the public defender talked to the presiding judge in chambers and informed the judge that the petitioner was going to represent himself and try his own case. The judge insisted the public defender represent the petitioner, stating that he was not going to have any man go to trial for murder without legal representation. The public defender then requested a continuance to further investigate and prepare for trial. The judge informed him that the petitioner had had sufficient notification of the date of trial, and that the trial would proceed. Thereafter the public

·defender asked for a 24-hour continuance for the same purpose, which was denied.

While the trial was in progress the petitioner complained to the trial judge that he was not being properly represented and in his opinion counsel were not doing things that should be done or things that were right as far as their capacities as attorneys required them. He complained in like manner the second day of the trial. Just in what respect counsel were not properly representing him is not shown by the petitioner's testimony. The trial judge informed the petitioner that counsel appointed to defend him were competent, and he would see that they properly represented him.

During the trial the petitioner made suggestions with reference to the examination of the State's witnesses, especially as to identification and what points should be brought out on cross-examination. He was asked by his counsel to take the stand and testify in his own behalf. The petitioner declined to do so, giving as his reason that if he was questioned as to his previous conviction of a felony it would prejudice his case. The petitioner made the closing argument to the jury in his own behalf. In the argument he said he did not know where he was the night the murder was committed, and did not personally care to state where he was. It is obvious his defense was not an alibi, and just what defense he sought to interpose at the trial is still unknown.

Attorney Baldwin testified that he was employed by a friend of the petitioner to report to him on the morning of the trial, with the understanding that the petitioner was to defend himself and have complete charge of his defense, but that he was to assist him if the petitioner desired him to do so. The petitioner requested that he and the public defender stay around during the progress of the trial and be of help, if required.

The petitioner complains that he requested the public defender to subpoena certain witnesses in his behalf which were either suppressed by nonservice or pur-

posely not called, with the exception of one witness who testified that the petitioner had used no aliases since he had known him in 1934.

It appears that the witnesses desired by the petitioner were law enforcement officers of the State of Missouri, the warden of the Nebraska State Penitentiary, a United States Commissioner, and one witness at whose home the petitioner claimed he lived. Efforts from every available source were made to locate this last-mentioned witness, and he could not be found. It is apparent this witness knew little, if anything, about the facts upon which the charges were based. Just what he would have testified to is not shown in the record. It is inconceivable from the petitioner's testimony how any of these witnesses would have been of assistance to him, except that he may have thought their prestige as law enforcement officers might aid him.

On March 18, 1936, the case was submitted to the jury which returned a verdict of guilty as charged. The trial court directed counsel for the defense to file a motion for new trial, which was done by attorney Baldwin in the statutory language within proper time. The petitioner made no request that counsel representing him file a motion for new trial. He upbraided attorney Baldwin for filing the motion. He complains that the motion was insufficient to preserve his legal rights in a proceeding in error.

Upon the overruling of the motion for new trial the petitioner was sentenced to life imprisonment in the Nebraska State Penitentiary.

The sufficiency or insufficiency of a motion for a new trial is not a proper matter to be considered in determining whether or not a writ of error coram nobis should issue. It is a matter properly to be determined in a proceeding in error.

The foregoing facts disclose that the petitioner, for a considerable length of time, was cognizant of the charges filed against him. He had possession of and studied the

transcript of the evidence taken at the preliminary hearing, and advised with other inmates of the Leavenworth prison with reference to the sufficiency of the same to convict him. It is also apparent that he was apprised of and knew what his constitutional rights were with reference to procuring counsel and to have witnesses testify in his behalf. He desired to defend himself, refused to divulge to appointed counsel what defense, if any, he had, and for the most part ignored counsels' efforts to assist him and refused to cooperate with counsel. He demanded an early trial, his request was granted, and he was notified by the county attorney's office the date the trial was set.

In United States ex rel. Thompson v. Nierstheimer, 166 F. 2d 87, certiorari denied, 334 U. S. 850, 68 S. Ct. 1503, 92 L. Ed. 1773, it is said that no standard length of time must elapse before a defendant in a capital case should go to trial. Each case, and the facts and circumstances surrounding it, provides its own yardstick. There must not be a mere sham proceeding or idle ceremony of going through the motions of a trial, and courts should not move so rapidly as to ignore or violate the rights of the defendant to a fair trial. However, courts do not deny due process just because they act expeditiously, and if no witnesses are suggested or information furnished that would possibly lead to some material evidence or witnesses, the mere failure to delay in order to investigate would not be a denial of due process. See, also, State v. Gibson, 229 N. C. 497, 50 S. E. 2d 520.

The defendant complains because of the court's refusal to grant him a continuance. In this proceeding for writ of error coram nobis this question is to be considered only from the viewpoint of whether or not the court in overruling the motions for continuance constituted a denial of the petitioner's constitutional rights.

"An application for a continuance is addressed to the sound discretion of the trial court and its ruling thereon will not be held erroneous, unless an abuse of discretion

is disclosed by the record." Kerr v. State, 63 Neb. 115, 88 N. W. 240.

In Flannigan v. State, 127 Neb. 640, 256 N. W. 321, certiorari denied, 294 U. S. 725, 55 S. Ct. 640, 79 L. Ed. 1256, it was said: "It is no abuse of discretion for the trial court to refuse defendant a continuance unless it. clearly appears that defendant suffered prejudice." See, also, Cornell v. State, 138 Neb. 708, 294 N. W. 851; Maher v. State, 144 Neb. 463, 13 N. W. 2d 641, certiorari denied, 323 U. S. 757, 65 S. Ct. 91, 89 L. Ed. 606; Crono v. United States, 59 F. 2d 339.

"Every person accused of crime should be afforded reasonable oportunity to marshal his witnesses and prepare for trial, but mere procrastination—delay for delay's sake—should not be tolerated." Hubbard v. State, 65 Neb. 805, 91 N. W. 869. See, also, Hawk v. Olson, 145 Neb. 306, 16 N. W. 2d 181.

As stated in State v. Lasswell, 133 Wash. 428, 233 P. 928: "One accused of crime has the constitutional right of representation by counsel, and while it is a rule that a motion for a continuance on the alleged ground of insufficient time for counsel to prepare for trial is addressed to the discretion of the trial court, there is often involved in the due consideration of such a motion, as is the case here, another important rule, viz.: 'It is essential that accused show no lack of diligence in endeavoring to employ counsel.' 16 C. J., Criminal Law, p. 483, § 875. 'It must appear that lack of preparation did not arise from defendant's own laches.' 16 C. J., p. 482, § 874."

The overruling of the motions for continuance did not in any manner hinder or burden the petitioner to the extent that there was reasonable ground to believe that the result of the trial might have been different if a motion for continuance had been sustained. The contention of the petitioner that he was hastily brought to trial in violation of his constitutional rights is without merit.

It will be observed from the cited authorities that the question of whether or not there was an abuse of discretion on the part of the trial court in overruling a motion for continuance is a matter properly to be determined by proceedings in a writ of error.

The petitioner takes the position that he was an uneducated man, unacquainted with the procedure in criminal courts, and unable to recognize what steps should be taken to protect his legal interests.

In addition to the evidence previously noted as to the petitioner's acquaintance with criminal matters and procedure, the evidence further discloses the following. According to his testimony at the time of the hearing in the instant case he was past 60 years of age, and had had a third grade education. He had four times been convicted of a felony, and once for violation of parole. The petitioner was charged with criminal offenses other than those of which he had been convicted. He was represented by counsel on at least five occasions as shown by the record, when charged with criminal offenses.

It appears that on July 24, 1928, the petitioner, acting as his own counsel, brought an application for a writ of habeas corpus in which he raised the point that he could not be brought from the State of Missouri to the State of Nebraska to face a charge of violation of parole without extradition proceedings. The petitioner handled the matter himself, without assistance of counsel, and appeared in court in his own behalf.

On June 1, 1934, the petitioner, as defendant in an automobile larceny case in the United States Federal Court, Omaha division, represented himself. He refused to plead guilty to certain counts of the indictment, but selected other counts to which he was willing to plead guilty. He prepared, without assistance of counsel, an appeal to the Circuit Court of Appeals.

Subsequent to the original trial the petitioner, without counsel, carried on numerous and sundry litigation in his own behalf, filing applications for writs of habeas

corpus in the district courts of Nebraska and the United States courts. See, Hawk v. O'Grady, 137 Neb. 639, 290 N. W. 911; Hawk v. O'Grady, 311 U. S. 645, 61 S. Ct. 11, 85 L. Ed. 412; Hawk v. Olson, 130 F. 2d 910; Hawk v. Olson, 317 U. S. 697, 63 S. Ct. 435, 87 L. Ed. 557; Ex parte Henry Hawk, 318 U. S. 746, 63 S. Ct. 979, 87 L. Ed. 1123; Ex parte Hawk, 321 U. S. 114, 64 S. Ct. 448, 88 L. Ed. 572; Hawk v. Olson, 145 Neb. 306, 16 N. W. 2d 181; Hawk v. Olson, 324 U. S. 839, 65 S. Ct. 1021, 89 L. Ed. 1402; Hawk v. Olson, 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61; Hawk v. Olson, 146 Neb. 875, 22 N. W. 2d 136; Hawk v. Jones, 160 F. 2d 807; Hawk v. Jones, 332 U. S. 779, 68 S. Ct. 44, 92 L. Ed. 363. To set out the pleadings filed by the petitioner as attorney pro se in the above actions, and the progress of' the proceedings therein, would unnecessarily lengthen this opinion. The petitioner, in addition, filed certain pleadings in the district court for Douglas County with reference to a proceeding in error which will hereinafter be referred to in another assignment of error.

In addition, the record shows that the petitioner has assisted other inmates of the Nebraska State Penitentiary on at least 40 occasions, in preparing applications for writs of habeas corpus to be filed in the courts, and on occasions given legal advice to inmates on other matters. The record refutes the contention of the petitioner that he was ignorant and unacquainted with the procedure in criminal courts, and unable to recognize what steps should be taken to protect his legal interests or to preserve his constitutional rights.

The petitioner contends that his appointed counsel was ineffective due to lack of time to prepare for trial. The public defender assigned to defend the petitioner, as admitted in the petitioner's brief, was a competent lawyer in criminal matters. As public defender for a period of 16 years he engaged in the defense of those charged with criminal offenses in over one hundred instances, including 15 or 20 first degree murder cases. Attorney

Baldwin had been public defender for a period of eight years and had engaged in at least six murder cases. In addition, the record of the original trial shows that the public defender made proper and consistent objections to testimony of the State's witnesses and extensively cross-examined them on various phases of their testimony. The petitioner complained that the testimony of one of the State's witnesses was false. Upon examination of this witness by the public defender, his previous conviction of a felony was established.

At this point it might be appropriately remarked that the writ of error coram nobis cannot be invoked on the ground that an important witness testified falsely about a material issue in the case. See, Asbell v. State, 62 Kan. 209, 61 P. 690; Dobbs v. State, *supra*. Also, the writ of error coram nobis does not lie to test the credibility of witnesses in the criminal trial, the jury having passed upon same, nor the fact that counsel for the defense might have, or could have, presented the case in a different manner or used different strategy in such presentation.

We continue with the assignment of error now being discussed. The petitioner, with reference to the ineffectiveness of counsel appointed to defend him, cited as the most important case in his brief, Hawk v. Olson, 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61, as follows: "We think there was an allegation that no effective assistance of counsel was furnished in the critical time between the plea of not guilty and the calling of the jury. Continuance may or may not have been useful to the accused, but the importance of the assistance of counsel in a serious criminal charge after arraignment is too large to permit speculation on its effect. We hold that denial of opportunity to consult with counsel on any material step after indictment or similar charge and arraignment violates the Fourteenth Amendment."

In further support of this contention Dolen v. State, 148 Neb. 317, 27 N. W. 2d 264; *ante* p. 76, 36 N. W. 2d 566, is

cited to the effect that a reasonable time for the preparation of a defendant's case must be allowed between the assignment of counsel by the court and the time of the trial. Also cited by the petitioner is Spence v. Dowd, 145 F. 2d 451; Glasser v. United States, 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680. The above cases cited by the petitioner on ineffectivenes of defense counsel were not cases wherein the writ of error coram nobis was involved.

The petitioner also relies on the following language appearing in Ex parte Hawk, 321 U. S. 114, 64 S. Ct. 448, 88 L. Ed. 572: "Moreover, Nebraska recognizes and employs the common law writ of error coram nobis which, in circumstances in which habeas corpus will not lie, may be issued by the trial court as a remedy for infringement of constitutional right of the defendant in the course of the trial, * * *."

The record discloses that in the original trial the court-appointed counsel gave his best legal efforts to the defense of this petitioner, as likewise did attorney Baldwin, even though the petitioner ignored their services, refused to divulge what defense, if any, he had, and refused to cooperate in any efficient manner with counsel. His court-appointed counsel, under the circumstances, was not ineffective.

As stated in Hawk v. Olson, 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61, where the court was determining the sufficiency of a petition as to whether or not a cause of action in a habeas corpus case was stated: "The evidence may show that the charge was served upon petitioner well in advance of the trial * * * and that he had ample opportunity to consult with counsel and secure any needed witnesses."

If the defendant's defense was not made to his satisfaction, he certainly must have been aware of it at the time and could have availed himself thereof in a motion for new trial. Ineffective presentation of the defense in a criminal case is a recognized ground for new trial if appropriate facts exist. See, Cornwell v. State, 106 Ohio

St. 626, 140 N. E. 363; 16 C. J., Criminal Law, § 2642, p. 1145.

We repeat that an examination of the record does disclose that the petitioner was served with the charges filed against him well in advance of trial and he had ample opportunity to consult with counsel. There is no competent evidence that he at any time endeavored to procure counsel in his own behalf. He was rather impressed with his own ability to try his case, and his part in the trial has heretofore been exemplified. Likewise, he had the opportunity to secure witnesses in his behalf at the State's expense, as heretofore pointed out. There was no denial of due process of law as far as the petitioner was concerned under the facts adduced in this proceeding in error.

In Bute v. Illinois, 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 986, in passing upon claims of denial of due process of law contrary to the Fourteenth Amendment in state criminal trials, it was said: "Doubts should be resolved in favor of the integrity, competence and proper performance of their official duties by the judge and the State's attorney. They were state officials lawfully chosen to discharge serious public responsibilities under their oaths of office."

"Due process of law requires only that the accused be given sufficient notice of the nature of the charge against him in order that he may prepare a defense and plead the judgment as a bar to any subsequent prosecution for the same offense." Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111. See, also, In re Application of Rozgall, *supra.*

The petitioner contends the district court erred in finding that the petitioner herein was guilty of lack of due diligence and culpable negligence in failing to take necessary action to perfect an appeal to the Supreme Court of Nebraska from the verdict and judgment rendered against him.

The record discloses that on April 10, 1936, the petitioner prepared and filed in the district court for Douglas

County, a poverty affidavit requesting that the costs of the transcript and bill of exceptions and all filing fees be paid by the state. Pursuant to the filing of the poverty affidavit an order was made by the trial judge directing the clerk of the district court to prepare the transcript, and the reporter to prepare a bill of exceptions at the cost of the county. On April 10, 1936, the petitioner prepared notice of appeal to the Supreme Court, and prepared and filed a praecipe for transcript. On May 20, 1936, the court reporter wrote the petitioner with reference to the preparation of the bill of exceptions, explaining to him that she had 40 days from the beginning of the term, about May 5th, to prepare the bill of exceptions, which would be ample time. On May 25, 1936, the reporter wrote the petitioner that the bill of exceptions was ready for delivery, and asked him if he wished it sent to him or to his attorney at Superior, Wisconsin. The presumed attorney at Superior, Wisconsin, was one J. J. Cardigan, a former inmate of the Leavenworth penitentiary and an acquaintance of the petitioner.

We are not favored with the testimony of the court reporter because of her death before the hearing in the district court.

On June 9, 1936, the trial judge wrote to J. J. Cardigan, Superior, Wisconsin, replying to Cardigan's letter of June 6, 1936, written to the court reporter. In this letter the judge stated: "* * * I will say that I am of opinion that you and Mr Hawk are going to get yourselves in a situation, if you don't look out, where Hawk will have no appeal to our Supreme Court. To make either a transcript or a bill of exceptions or both, and forward them to you, will not be effective in the matter of preparation of an appeal." The court then explained in some detail the necessary procedure to perfect an appeal by writ of error, and explained fully and completely the time element involved in perfecting the proceedings in error. The judge further requested Cardigan, if he was working

in the interest of the petitioner, to get someone to take care of the matter, stating that he could not expect the court reporter, the county attorney, or himself to perfect this appeal for the petitioner, that no transcript of evidence would be sent to Cardigan, and there was no desire on anyone's part to prevent the petitioner taking an appeal. He further stated: "* * * but we do not want him or any one else to say, if he does not comply with the law, that he has been prevented from doing so by the neglect of any one here, and that is the reason I am writing you this letter today." A copy of this letter was sent to the petitioner, and the trial judge received no response from the petitioner with reference to the letter.

On June 10, 1936, the petitioner filed an application in the district court for Douglas County for extension of time to perfect the appeal, and on June 20, 1936, prepared and filed a motion in the district court for Douglas County for an extension of 60 days time to file transcript and bill of exceptions in the Supreme Court.

The afore-mentioned legal filings prepared by the petitioner without assistance of counsel were as regular in form and language as any competent attorney would prepare them, another instance shown by the record of the familiarity of this petitioner with criminal procedure.

On June 2, 1936, the trial judge, on his own motion, extended the time for preparing the bill of exceptions 40 days commencing from the date of June 11, 1936. Some time after the time for appeal had elapsed, the bill of exceptions was found in the county attorney's office by counsel appointed to represent the petitioner in another matter in the United States District Court.

It will be observed from the foregoing facts that the trial judge made every possible endeavor to assist the petitioner in perfecting appeal by writ of error to the Supreme Court. There is no legal requirement that the bill of exceptions be sent to one not counsel for the petitioner nor shown to represent him.

The petitioner's contention that he was denied the right

to perfect his appeal to this court is not persuasive. He did not desire that a motion for new trial be filed, and abused counsel for filing one in his behalf. He did not request the public defender or his assistant to appeal. To have sent the bill of exceptions to J. J. Cardigan under the circumstances might have been a matter which the petitioner could have taken advantage of in further litigation. He is in no position to complain.

The petitioner, by his own conduct, was guilty of lack of due diligence and culpable negligence in failing to take necessary action to perfect an appeal to this court. The facts do not show that the petitioner was prevented from perfecting his appeal within the time allotted by statute.

The writ of error coram nobis will not lie to vacate a judgment of conviction and secure a retrial of the accused because of his inability, within statutory limits of time, to prepare a record on appeal to this court showing the errors of which complaint was made. Such writ lies only to correct errors of fact, in ignorance or disregard of which the judgment was pronounced. The unvarying test of the writ of error coram nobis is mistake or lack of knowledge of facts inhering in the judgment itself. It has never been granted to relieve from consequences arising subsequently to the judgment. See Collins v. State, 66 Kan. 201, 71 P. 251, 60 L. R. A. 572, 97 Am. S. R. 361.

Other assignments of error are without merit and are not such as may be considered in determining whether a writ of error coram nobis should issue.

Within the legal concept of the writ of error coram nobis, the purpose of the writ and the scope thereof, the facts as hereinbefore set out and authorities cited with reference thereto, and for the reasons given herein, the judgment of the district court in denying the petitioner the writ of error coram nobis is affirmed.

AFFIRMED.