Arthur **GEAMINEA**, Applicant,

v.

The **STATE OF NEBRASKA**, Maurice H. Sigler, Warden of the Nebraska State Penitentiary, Lincoln, Nebraska, Respondent.

Civ. No. 526 L.

United States District Court
D. Nebraska.

June 25, 1962.

**310**

Donald E. Endacott, Lincoln, Neb., for applicant.

Bernard L. Packett, Asst. Atty. Gen., of Nebraska, for respondent.

VAN PELT, District Judge.

This matter is before the court upon a petition for a writ of habeas corpus. A hearing has been held and counsel have submitted briefs, and the matter is now ready for determination. The hearing was held pursuant to an order of the court directing Respondent to show cause why the writ should not issue, and the parties have agreed that all the pertinent facts were produced and that a hearing such as specified in 28 U.S.C.A. § 2243 is now unnecessary.

Petitioner is currently an inmate at the Nebraska State Penitentiary serving a seven year sentence imposed by the District Court of Douglas County, Nebraska, for grand larceny. He is 53 years of age and has but two years of formal education. His health is poor due to a diabetic condition.

On October 30, 1956 Petitioner was found guilty of the crime for which he is presently imprisoned. On December 5, 1956 he was sentenced. On January 4, 1957 Petitioner filed a poverty affidavit in the District Court of Douglas County asking for a transcript without cost, and an order was entered requiring the clerk of that court to furnish a free transcript. On January 5, 1957 Petitioner filed a petition in error in the Supreme Court of Nebraska, and an affidavit of poverty, and on the same date the Supreme Court of Nebraska issued a writ of error. On September 28, 1957 the Supreme Court of Nebraska dismissed applicant's petition for failure to file a brief. During the time the error proceedings were pending in the Nebraska Supreme Court Petitioner was not out on bail. The above facts have been agreed upon by stipulation of counsel. Petitioner's testimony at the hearing reveals that during the trial he had been represented by counsel of his own choosing, but that while the error proceedings were pending his counsel withdrew because Petitioner lacked funds with which to pay him. Petitioner testified that he did not file a brief because he did not know how and because he did not have the money to do so.

The invasion of constitutional rights which is claimed is that the rule of the Nebraska Supreme Court requiring that printed briefs be filed operated to deny Petitioner due process and equal protection of the laws, since it prevented him from having appellate review on account of his poverty.

Petitioner after his incarceration in the penitentiary made numerous attempts to seek his freedom, which included three applications for habeas corpus in the Lancaster County District Court, two applications to the Nebraska Supreme Court for leave to file an original habeas corpus action, three applications for habeas corpus in this court, an application to the Court of Appeals for the Eighth Circuit for leave to file an application for a certificate of probable cause, and an attempt to appeal to the Nebraska Supreme Court from the denial of his petition by the Lancaster County District Court.

The first question presented is whether Petitioner has exhausted his state remedies.

28 U.S.C.A. § 2254 requires the exhaustion of available state remedies before federal habeas corpus can be granted. That same section, however, makes exhaustion unnecessary in two specific instances: (1) where there is an absence of available state corrective process, or

(2) the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. Should either of these two inadequacies of state procedure exist, Petitioner would be excused from seeking redress from the courts of Nebraska. An investigation of the available state remedies must therefore be made.

A similar inquiry was made by Judge Delehant in Grandsinger v. Bovey, 153 F.Supp. 201 (D.Neb.1957), and while it was there concluded that under the circumstances of that case neither the availability nor effectiveness of the state processes were wanting, the pertinent observation was made that the "answer is not unmistakably clear when one examines the course of Nebraska authority." 153 F.Supp. at p. 211. A similar observation might well be made in the instant case.

 This court is strongly inclined to the view that on the facts of this case there is absent any state process by which to correct the events of which complaint is made. This belief comes about as a result of a study of Nebraska post-conviction procedures.

Keeping in mind that the purported violation of federal constitutional rights is the denial of the right to appeal in violation of the due process and equal protection clauses of the 14th Amendment, it appears to this court that such a claim cannot be raised in a state habeas corpus proceeding. This result seems to be the only proper conclusion which may be drawn from the pronouncements of the Nebraska Supreme Court that in order to obtain release by habeas corpus the sentence must be "absolutely void."

"To release a person from a sentence of imprisonment by habeas corpus, it must appear that the sentence was absolutely void. Habeas corpus will not lie to discharge a person from a sentence of penal servitude where the court imposing the sentence had jurisdiction of the offense, had jurisdiction of the person of the defendant, and the sentence was within the power of the court to impose. Such a judgment is not void." Jackson v. Olson, 146 Neb. 885, 22 N.W.2d 124, at pp. 129–130, 165 A.L.R. 932 (1946).

This rule has been adhered to. In Sedlacek v. Hann, 156 Neb. 340, 56 N.W. 2d 138, (1952), cert. denied 345 U.S. 974, 73 S.Ct. 1123, 97 L.Ed. 1390, nothing was alleged to impeach the jurisdiction of the sentencing court over the offense or the person of the prisoner or to attack the power of the court to render the sentence. It was accordingly held that habeas corpus would not lie. In Truman v. Hann, 154 Neb. 501, 48 N.W.2d 418 (1951) the Supreme Court applied the rule and held that habeas corpus could not be used to inquire into the regularity of proceedings leading up to the sentence. It has recently been held that proceedings subsequent to conviction are not cognizable in habeas corpus proceedings. Rhodes v. Sigler, 172 Neb. 439, 109 N.W.2d 731 (1961). The United States Supreme Court once suggested broadly that habeas corpus was available in Nebraska to obtain release from imprisonment resulting from the deprivation of constitutional rights. Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941). The Nebraska court, however, made it clear that such a generality is not a correct reflection of Nebraska law. Jackson v. Olson, supra, responded to the Smith v. O'Grady opinion by repeating the rule that habeas corpus in this state lies only where the sentence is absolutely void. The Grandsinger opinion, supra, recognized the restrictive nature of Nebraska habeas corpus:

"[T]he later Hawk opinions tend strongly to support the view that a proceeding in the state court for a writ of habeas corpus may not be resorted to in Nebraska's courts because of error or denial of due process in the reception of an involuntary or coerced statement or confession made by one accused of crime, or even because of the denial of the federally guaranteed constitu-

tional right to the effective assistance of counsel through the circumstances pleaded here * * *." 153 F.Supp. at p. 214.

The claim which Petitioner is now raising in this court does not attack the jurisdiction of the sentencing court over his person or over the offense, nor does it assert that the sentence was without the power of that court. Hence, under the Nebraska standard, the judgment and sentence are not "void." It follows that if state habeas corpus is obtainable only when the judgment is "void" then Petitioner has no right to relief by way of habeas corpus in the courts of Nebraska.

Another post-conviction remedy available in Nebraska is the writ of error coram nobis. The Nebraska court in Hawk v. State, 151 Neb. 717, 39 N.W.2d 561 (1949), cert. denied 339 U.S. 923, 70 S.Ct. 612, 94 L.Ed. 1346, discussed this remedy.

"The common-law writ of error coram nobis is not a substitute for the statutory remedy of a writ of error under the Nebraska criminal procedure. * * *

"The purpose of the writ of error coram nobis should be noted. The writ of error coram nobis is to enable the court to recall some adjudication, made while some fact existed which, if before the court, would have prevented rendition of the judgment, and which, through no fault of the party, was not presented. * * *

"The common-law writ of error coram nobis to bring into the record facts which were unknown to the defendant at the time of trial through no lack of reasonable diligence on his part, which, if known at the time of the trial, would have resulted in a different judgment, exists in this state * * *."

Under the writ of error coram nobis it is possible, although the court thinks that it is by no means certain, that a prisoner could raise constitutional questions which arose during the trial, and thus obtain relief that Nebraska habeas corpus does not seem to afford. But error coram nobis is limited to facts pertinent to the trial which were not brought forth at the trial. It is not a method for redressing wrongs occurring after the trial. Thus, the writ of error coram nobis is not available relief for the wrongs of which Petitioner now complains.

Nebraska also provides for original habeas corpus actions in the Supreme Court. Sec. 24–204, R.R.S. (1943) gives that court original jurisdiction in habeas corpus matters. However, the Supreme Court is not required to entertain such applications, and Petitioner was twice denied leave to file an original habeas corpus action.

■■ The above summation of Nebraska law is by way of explanation of the court's view, previously stated, that in the circumstances of this particular case there is an absence of available state corrective process. The court is cognizant of the fact that it is for the Nebraska court to finally determine in a given proceeding what issues are justiciable in a state habeas corpus proceeding. The court is also aware of the rule that federal courts must assume that some means exists under state law for obtaining vindication of alleged violations of constitutional rights unless it is conclusively shown to the contrary. Starkweather v. Greenholtz, 267 F.2d 858 (8th Cir. 1959), cert. denied 360 U.S. 921, 79 S.Ct. 1442, 3 L.Ed.2d 1537. Nevertheless, this court must make its own independent assessment of the Nebraska law, and having done so, concludes that no way is open for Petitioner to have his claim considered by the State. The futile attempts by Petitioner to have his rights vindicated support this conclusion.

■ Even on the assumption that state habeas corpus is an available corrective process, the court would still conclude that Petitioner is relieved from seeking that remedy since the court be-

lieves that circumstances exist rendering such process ineffective to protect the rights of the prisoner. Of the numerous efforts to obtain relief the one now most significant is his latest petition for habeas corpus in the Lancaster County District Court which was denied on December 29, 1961. His appeal from that denial to the Nebraska Supreme Court was dismissed for failure to file a printed brief as required by Rule 9 of the rules of that court. The pertinent part of the rule governing printing is as follows:

"9(a) *How Printed.* All briefs shall be either (1) printed, or (2) reproduced by a duplicating process from copy prepared on a proportional-spacing typing machine, the type of which simulates printing. Both processes will be considered printing. Briefs shall be printed on unglazed white book paper on pages 6½ inches wide and 9½ inches long, trimmed size. The printed matter shall be 4 inches wide and 7 inches long. The type used may be 12 point but not smaller than 10 point, except that exhibits may be prepared in smaller sizes when necessary. Italic type or underscoring may be used on citations."

"9(e) *Cost of Printing.* When the parties or their attorneys furnish their printed briefs in conformity to the rules of this court it shall be the duty of the clerk to tax a fee therefor against the unsuccessful party to be collected and paid to the successful party as other costs. \* \* \*"

Sec. 29-2823, R.R.S.1943 provides that appeal in habeas corpus matters is the same as that provided in civil cases. It would appear from this that if Petitioner had prevailed upon appeal he would have been entitled to recover back the costs of printing briefs. But no way appears, and the State has suggested none, by which an indigent prisoner could acquire the necessary funds for printing briefs.

The matter reduces itself to this simple proposition: a prisoner seeking his freedom in Nebraska via state habeas corpus proceedings was not entitled to a hearing on the merits on appeal because he was unable to file a printed brief for lack of funds. It should be pointed out here that it is conceded that Petitioner was an indigent, and in fact did not have the funds with which to have briefs printed.

■ The rule that a printed brief must be filed in order to enable a prisoner to be heard on appeal from the denial of habeas corpus where no provision is made for providing such briefs or waiving the requirement for indigent prisoners is an unconstitutional denial of equal protection of the laws. This conclusion is compelled by the recent United States Supreme Court decision of Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). In that case the Supreme Court struck down as violative of the equal protection clause of the 14th Amendment the provision of Iowa law which required the payment of filing fees by an indigent before an application for habeas corpus or the allowance of an appeal in a habeas corpus proceeding could be docketed. The Court said:

"We hold that to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws." 365 U.S. at p. 709, 81 S.Ct. at p. 896.

■ It is common knowledge that printing costs are expensive. The Nebraska Supreme Court rules provide that $2.40 per page may be taxed as costs. The requirement of a printed brief just as surely and effectively interposes a "financial consideration" between an indigent prisoner and his right to appeal in a habeas corpus case as does the requirement that a filing fee be paid. The fact that a successful applicant may be entitled to recover such cost should he

prevail can hardly avail the indigent unable to acquire the printing costs in the first instance.

One distinction should be noted between the present situation and that in Smith v. Bennett. In the Smith case the matter under consideration was a state statute, and it was conceded by the State that inability to pay the filing fee would render habeas corpus unavailable. Here, however, a rule of court is being considered. As such it would seem clear that the court, having promulgated the rule, could in the exercise of its discretion dispense a prisoner from compliance. Thus, the rule is capable of being applied in a constitutional manner, so it is not the rule itself that is unconstitutional. One instance in which the requirement was so applied is referred to in a footnote by the United States Supreme Court in Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941). In that case the Nebraska Supreme Court in a habeas corpus appeal denied a motion of the petitioner for relief from the printed brief requirement, but did so only on the ground that upon an examination of the whole record it found the appeal to be without merit. 312 U.S. at p. 331, n. 1, 61 S.Ct. at p. 572. Despite the presence of the rule the petitioner in that case was heard upon the merits.

The inquiry must then be made whether the printed brief rule was applied in this case in an unconstitutional manner. This court believes that it was. The court will concede that the best method for seeking relief from the rule would be by a motion, or petition or showing to the Supreme Court requesting that the rule be dispensed with. But the court will not concede that such a procedural step was necessary in this case. This is because the dismissal of the appeal was based on Petitioner's poverty, despite any formal showing to the court by Petitioner as to his poverty. It should be noted that Petitioner did tender for filing a handwritten brief. It was refused for filing since it was not printed. This factor is significant, because it puts

the dismissal of Petitioner's appeal upon the ground that no *printed* brief was on file, and not upon the ground that no brief was on file (a proper and constitutional ground which would warrant dismissal). When the State action is based upon the failure to file a printed brief it is unconstitutional where the prisoner is an indigent. The tender of the handwritten brief and its rejection were sufficient to place the State action upon an unconstitutional ground. The transcript of the lower court proceedings on file indicated that Petitioner was proceeding as a pauper. This matter will be discussed further when the court considers Petitioner's attempt to appeal his conviction.

The conclusion that the tender of a handwritten brief of an indigent was sufficient is also supportable by the existence of other circumstances. The rules of the Supreme Court, a copy of which had been furnished Petitioner, state:

"9(d) *Failure to Comply.* The clerk shall refuse to file any brief not prepared in accordance with this rule and shall immediately notify counsel of the objections thereto."

There is nothing in Rule 9 indicating that relief from the rule is obtainable. Petitioner had also received a letter dated February 14, 1962 from the clerk of the Supreme Court, Mr. George H. Turner, informing him that "The requirements for printing and filing of briefs, * * * are rules of the court and I have no authority to vary them in any way." Another letter from Mr. Turner informed him that "Under the provisions of rule 9(d) of the rules of this court, I am required to refuse to file this material [Petitioner's handwritten brief] since it has not been prepared in conformity with rule 9(a) of the rules of this court." Thus, rule 9 dealing with the printing of briefs indicates that unless the briefs are prepared in conformity with the rule they shall not be accepted for filing. In addition, the correspondence which Petitioner received from the clerk of the Supreme Court also indicated that the rule was an ab-

solute one. It would appear, therefore, that Petitioner could believe, and justifiably so, that the printed brief requirement had to be complied with. Under such circumstances an uneducated man such as Petitioner could not be. expected or required to take further steps. Certainly federal courts must not lightly find that the action of a State has violated constitutional rights, but, correspondingly, it must not avoid such a conclusion if to do so would cast unrealistic burdens upon those seeking vindication of their rights.

A prisoner in Petitioner's position, but with sufficient funds to have a brief printed, would have been heard on appeal. The sole reason Petitioner was not heard was because he was too poor to have a brief printed. This denial based on the indigent status of Petitioner was an unconstitutional denial of equal protection of the laws.

Counsel for the State in arguing that Petitioner had not exhausted his state remedies, urged in substance that he was not excused from having had his habeas corpus appeal heard on the merits by the Supreme Court since he could and should have made a showing to that court and thereby attempted to have the printed brief requirement dispensed. Counsel pointed to Rule 15 of the Supreme Court rules as authorization for such a showing. This court has already concluded that such a showing was unnecessary under the circumstances. The presence of rule 15 does not change the conclusion. That rule provides in part:

"15. *Defaults.* Whenever the brief of appellant is not on file by brief day the judgment will be affirmed or the proceedings dismissed, unless, on sufficient showing, it is otherwise ordered by the court."

The court agrees with Petitioner's counsel that this provision pertains primarily to time for filing of briefs and not to the printed brief requirement. Rule 15 cannot be read as a specific authorization for the Supreme Court to dispense with the printed brief requirement. Undoubtedly, a person learned in the law and its procedures could have sought relief by making a showing such as is mentioned in rule 15. But its provisions cannot be read as mandatory. It would seem only logical that a provision for a showing should be included in rule 9, thereby informing indigent persons that they might seek relief from the printed brief rule. Considering all the circumstances of this case, including the educational level of petitioner and his numerous attempts to secure relief, the argument that he should have made a showing to the Supreme Court is not convincing.

In summary, assuming that habeas corpus was an available corrective process Petitioner was excused from following it through to its conclusion since the printed brief requirement was a circumstance rendering such process ineffective to protect the Petitioner's rights. There is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. Under 28 U.S.C.A. § 2254 Petitioner is entitled to be heard in this court.

■■ Before finally concluding this portion of the opinion another matter or two must be mentioned. The State in its brief makes the argument that the matters now claimed were not raised in the State courts. In view of the holding that no corrective process is available this contention by the State is probably not sound. Without deciding that point, the Court assumes for present purposes that Geaminea was bound to present these same matters to the State courts. However, after considering again the low education level of Petitioner, and reading the three separate petitions for habeas corpus which he filed in the Lancaster County District Court the only proper conclusion is that Petitioner has sufficiently advanced his claim in the State courts to satisfy the requirement. A man such as Petitioner must be accorded the greatest possible leniency in the construction of the legal documents

he has prepared. After having attempted to make known all his various complaints in so many different proceedings, in so many different pleadings, briefs and letters, it would be manifestly unjust to say that Petitioner has not sufficiently raised his claims in the courts of the State. This court cannot justify such a rigid position.

■ The final point concerns the question whether Petitioner was required to seek certiorari in the United States Supreme Court. The answer is that he was not so required. Certiorari in a state habeas corpus action is a part of the exhaustion of remedies process, but where, as here, a prisoner is relieved from the requirement of exhausting state remedies it is a necessary corollary that he need not seek certiorari. The courts have so held. E. g. United States ex rel. Embree v. Cummings, 233 F.2d 188 (2nd Cir. 1956).

Consideration of the merits of Petitioner's action also raises the question of the rule requiring printed briefs, since the primary allegation is that Petitioner was denied due process and equal protection by being dismissed on appeal for failure to file a printed brief, which failure was due to his poverty. It has been stipulated by the parties that the appeal from the conviction was dismissed for failure to file a brief, and Petitioner's undisputed testimony is that he did not file a brief because he could not afford to do so. It should be noted here that Petitioner did not attempt to file a handwritten brief nor did he make a request or showing in an attempt to avoid the requirement that he file a printed brief.

The proposition asserted by Petitioner is as follows:

"On September 28, 1957, the Nebraska Supreme Court dismissed applicant's case pursuant to Rule 9 (a), Revised Rules of the Supreme Court of Nebraska, which requires that all briefs shall be printed. Rule 9(e) thereof provides that the expense of printing briefs shall be taxed as costs. Nebr.R.R.S.1943, § 29–2306, provides that, if an affidavit of poverty is filed by the appellant, the county in which the indictment was found shall pay these costs upon entry of final judgment. Since a brief had to be printed in order to be filed, and since a brief had to be filed before the expenses of printing could be recovered, applicant, who, because of his poverty, could not pay these expenses, was effectively denied the right of appeal which would have been available to a person with sufficient funds. To base the right to appeal on the ability of the appellant to afford a printed brief is an arbitrary and unreasonable distinction without any substantial relation to the object and purpose of appellate review. Applicant was, therefore, denied due process and equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States."

■ Analysis of this contention must start by stating two basic propositions.

(1) A state in granting appellate review cannot do so in a way that discriminates against some convicted defendants on account of their poverty. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

(2) States are free to devise their own systems of review in criminal cases. Carter v. Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172 (1946), and may condition the right to appeal upon compliance with the requirements for obtaining review. See, Brown v. Allen, 344 U.S. 443, 486, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

It is obvious, of course, that the prerogative of the state stated as proposition 2 is limited by proposition 1, so that the state's rules governing appeals must not operate so as to discriminate against indigents.

The court must decide if the action of the Nebraska Supreme Court taken pursuant to its rules discriminated against Petitioner on account of his poverty. The conclusion is that Petitioner was not denied his constitutional rights. It has heretofore been stated that the rule itself is not unconstitutional, since courts have the undoubted right to specify the mode and method of practice before them, and since it is capable of being applied in a constitutional manner because of the court's right to waive its provisions. The remaining inquiry is whether the rule was applied in a constitutional manner in this particular instance. This question must receive an affirmative answer. The only thing appearing to the Nebraska Supreme Court at the time its order of dismissal was entered was that no brief of any nature had been filed by Petitioner. No showing had been made that the failure to file was the result of indigency. No handwritten brief had been submitted which would have indicated inability to comply with the printed brief requirement. Dismissal was thus taken for failure to comply with the rules of court by submitting a brief. Dismissal was not made, as the Petitioner's application suggests, for failure to file a *printed* brief. If Petitioner had submitted a handwritten brief and had been dismissed it could then be said that he failed to receive appellate review because of his poverty, or if he had requested waiver of the rule and waiver was denied it could likewise be said that his impoverished condition was the sole reason denying him review. Upon these same facts a prisoner who had adequate funds but failed to file a brief would have similarly been dismissed. The Supreme Court's action was not invoked so as to discriminate against Petitioner because of his poverty.

There is an aspect of this matter that should not be overlooked, and that is the regrettable fact that Geaminea has in fact been discriminated against. Not, however, by the State of Nebraska or its highest court. Lack of funds which prevented Petitioner from filing a brief might well be termed, in the language of Mr. Justice Frankfurter in Griffin v. Illinois, supra, a "contingency of life."

A review of the authorities relied upon by Petitioner convinces the court that failure by some means to seek relief from the rule means that relief is now unavailable. In each of the cases relied upon [1] the prisoners took affirmative steps seeking to avoid the obstacle that prevented them from getting relief. In Griffin indigent prisoners sought to avoid the rule that in non-capital cases free transcripts were not available. They moved the trial court for a stenographic transcript without cost, and raised the same question in post-conviction proceedings. They were unable to get appellate review because they were too poor to buy a transcript. In Eskridge an indigent prisoner moved the trial court for a free transcript (which could be furnished indigents at public expense if the trial judge thought it would promote justice) and the motion was denied. The Washington Supreme Court dismissed the prisoner's appeal for failure to file a transcript and statement of facts and also denied a motion for a mandate ordering the trial judge to furnish a transcript. In Burns an indigent prisoner tendered appeal papers but the clerk of the Ohio Supreme Court refused to docket them since no filing fees were paid. In Smith indigent prisoners tendered motions for habeas corpus, poverty affidavits and motions to proceed in forma pauperis, but these were not docketed since no filing fee was paid. In each of these cases the failure to obtain a hearing was traceable to state action which discriminated solely on account of poverty, and the *United States Supreme Court* so found. In the instant

1. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Eskridge v. Washington Prison Bd., 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961).

**318**

case the action of the Nebraska court is not based upon the Petitioner's poverty, even though he was impoverished.

A contrary holding would be an absurd result, for any prisoner who had not appealed but who could show that he was a pauper at the time of sentence could argue that he had been discriminated against on account of his poverty.

■ Where the failure to obtain review on appeal is caused by noncompliance with a reasonable requirement of state appellate procedure, and not because of a discriminatory application of state rules concerning appeal there is no basis for federal habeas corpus. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Application of Moyle, 241 F.2d 615 (9th Cir. 1957). The case of Berg v. Cranor, 209 F.2d 567 (9th Cir. 1954) presents a somewhat analogous situation. There a prisoner failed to obtain appellate review of his conviction because his attorney failed to properly give notice of appeal. It was held that the prisoner's constitutional rights were not denied since the failure to obtain review was not because of action of the state. Similarly, in the instant case, Petitioner's poverty and failure to file a brief were not actions of the State of Nebraska.

The court has said that intolerable burdens cannot be cast upon those seeking to appeal. A candid look at the realities of Petitioner's situation can only result in the conclusion that the holding that a handwritten brief should have been tendered is in actuality the placing of an unrealistic burden upon this man. The court does not happily conclude that Petitioner must now be told, after his years of frustrated efforts to secure freedom, that he should have made a tender of a handwritten brief years ago. Despite the seeming harshness of such a conclusion, the court is convinced that such action was nonetheless necessary, since without it the State had a constitutional basis upon which to dismiss his appeal.

The court has also considered the other contentions raised by the application and finds them to be without merit. A separate order denying the application for a writ of habeas corpus will be entered.

The court wishes to express its appreciation to Mr. Donald E. Endacott, court-appointed counsel, for his thorough and able presentation of Arthur Geaminea's cause.