Brown SHUPE, Jr., Petitioner

v.

Maurice H. SIGLER, Warden, Respondent.

Civ. 649 L.

United States District Court
D. Nebraska.

June 16, 1964.

Norman Krivosha, Lincoln, Neb., for petitioner.

Richard H. Williams, Asst. Atty. Gen., of the State of Nebraska, Lincoln, Neb., for respondent.

VAN PELT, District Judge.

This matter is before the court upon a petition for writ of habeas corpus. A full and complete hearing has been held and counsel have submitted briefs. The matter now stands ready for decision.

Shupe is presently incarcerated at the Nebraska Penal and Correctional Complex serving a nine year sentence for assault with the intent to commit robbery. Sentence was imposed on January 5, 1959, for an offense which occurred on September 19, 1958. Shupe is presently 36 years of age and achieved an eighth grade education at the age of fifteen. However, while attending school at the reformatory he was returned to the level of third grade.

Petitioner alleges that his present confinement is unconstitutional and violative of the Fifth and Fourteenth Amendments of the Constitution of the United States claiming that he was deprived of counsel at his preliminary hearing at which time he entered a plea of guilty and at his arraignment at which he entered a plea of not guilty. He further alleges that he changed his plea of not guilty to one of guilty as a result of threats and coercion. It is petitioner's contention that such deprivation of counsel and coercion of a guilty plea make his present incarceration unconstitutional and illegal.

The initial issue for determination is whether petitioner has a presently available and unexhausted remedy in Nebraska of which he must first avail himself before applying to this court for relief.

It is true that the petitioner did not appeal his original conviction and sentence to the Nebraska Supreme Court.

It further is undisputed that petitioner has made no attempt to apply to the state courts for habeas corpus as provided by § 29–2801 or § 24–204 R.R.S.1943, Nebr. or writ of error coram nobis, both state post-conviction remedies. It is petitioner's contention that the present scope of these remedies available in Nebraska courts are limited so as to be in-

applicable to his contentions and ineffective to provide relief assuming the truth of his allegations. This court is compelled to join in petitioner's interpretation of the law of Nebraska as it exists today.

▮ A prisoner in state custody seeking federal habeas corpus relief must have first "exhausted the remedies available in the courts of the State * * *." 28 U.S.C.A. § 2254. Under the language of the statute such exhaustion is not necessary if there is an "absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." It thus becomes necessary to determine if petitioner has a presently available and effective remedy in the state courts which is still open to him and would provide relief in the event he could sustain the burden of proving the allegations made in his petition. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837.

▮ Nebraska law recognizes and provides a writ of error coram nobis. Such writ, discussed by the Nebraska Supreme Court in Hawk v. State, 151 Neb. 717, 39 N.W.2d 561, is not to be considered as a substitute for the statutory remedy of a writ of error, but is "to enable the court to recall some adjudication, made while some fact existed which, if before the court, would have prevented rendition of the judgment, and which, through no fault of the party, was not presented. * * *" However, as pointed out by the court in Hawk, supra, the facts to be considered must also have been unknown to the defendant at the time of trial. While this court held in Geaminea v. State of Nebraska, D.C., 206 F.Supp. 308, that it is possible that a prisoner could raise constitutional questions arising at the time of trial through the use of the writ, such use would not be possible in the case at bar, the facts having been known to the defendant at the time of trial.

▮ It further is the opinion of the court that the issues for determina-

tion herein cannot be successfully raised or advanced by petitioner in a state habeas corpus proceeding. The court reluctantly reaches the conclusion after examining the scope of the remedy in Nebraska as defined by the Nebraska courts. Judge Delehant extensively examined the scope of the writ in Nebraska in Grandsinger v. Bovey, D.C., 153 F. Supp. 201. It was there determined, under circumstances of that particular case, that an effective and available state remedy existed, but that in view of the "later Hawk opinions" the writ of habeas corpus may not be used to remedy the reception of an involuntary or coerced statement or confession or the denial of the effective assistance of counsel. In other words, the standards of the due process clause of the 14th Amendment of the United States Constitution are not utilized in determining the scope of the writ in Nebraska.

▮ The analysis of the scope of the Nebraska habeas corpus remedy thus remains as announced by this court in Geaminea, supra. This position was recently reiterated by the Nebraska court in Van Bokelman v. Sigler, 175 Neb. 305, 121 N.W.2d 572. This court is of the opinion that under the principles of Fay v. Noia, supra, petitioner need not attempt to exhaust potentially unavailable state court remedies to satisfy the requirements of 28 U.S.C.A. § 2254; and that this court must accept jurisdiction of this matter since the petitioner alleges nothing that would question the trial court's jurisdiction of his person, of the offense or the court's power to render the sentence given.

▮ While it is true that petitioner did not attempt to raise the issues relevant here on direct appeal from his conviction, and in fact perfected no appeal from his conviction, the record is void of any evidence from which this court could determine that petitioner bypassed the orderly procedure of the state courts in such a manner as to justify dismissing the present petition because of forfeiture of state court remedies. There is noth-

ing in the record indicating that petitioner intentionally relinquished his known right to appeal as required to find such a waiver of his state remedies under Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 and Fay v. Noia, supra.

Because the particular facts involved herein appear to fall outside the above described scope of habeas corpus in Nebraska and for reasons already set forth could not be presented through coram nobis, the court must conclude that the petitioner has no presently available remedy in Nebraska and the requirements of 28 U.S.C.A. § 2254 have been satisfied.

The primary contention of the petitioner is that his plea of guilty tendered to Judge English in the District Court of Douglas County, Nebraska, was induced by threats and promises and thereby the resulting judgment and sentence is void and of no effect.

There is no question but that petitioner was taken into custody on September 19, 1958. He was severely wounded by gunshot wounds inflicted during the arrest and taken to the Emanuel Hospital in Omaha, Nebraska. The wound required surgery, but before the operation was performed William Ryan, Deputy County Attorney for Douglas County, Nebraska, appeared at the hospital with a court reporter and took petitioner's statement while he was on the operating table. Mr. Ryan testified, in answer to a question by petitioner's counsel, that petitioner appeared to be a little weak but was in generally good condition considering. Later, in answer to a question propounded by the Assistant Attorney General, he stated that he proceeded to the surgery room and asked some questions as to what had taken place and that petitioner was not entirely conscious.

Shupe remained in the custody of the Douglas County Sheriff and on November 3, 1958 he appeared before the County Court of Douglas County, Nebraska, for preliminary hearing without counsel. The transcript shows that Shupe waived preliminary hearing and plead guilty. Shupe testified at the hearing before this court that no one offered him counsel, and when he asked Ryan for legal assistance he was told that none was provided. Bond was fixed at $10,000.00.

Shupe remained in custody. On November 6, 1958 an information was filed against him in the District Court charging him with assault with the intent to commit robbery. On December 12, 1958, Shupe was arraigned on the charge in District Court, the Public Defender was appointed to represent him, and he entered a plea of not guilty to the charge against him. The transcript further shows that on January 5, 1959, petitioner was brought before Judge English whereupon he withdrew his plea of not guilty and entered a plea of guilty. The Deputy Public Defender appeared in his behalf.

Mr. Ryan talked with petitioner on several occasions between December 12, 1958 and January 5, 1959 out of the presence of the Public Defender appointed to represent petitioner. The specific dates he could not recall. He further stated that he had discussed with petitioner the matter of the sentence and had discussed with him the extent of the sentence. In answer to the question "Do I further understand, sir, that you had promised him a sentence of nine years?" he stated:

"On the basis of information—let me explain it this way. We began the discussion of a plea, I'm sure, even prior to his arraignment in December, and he at times expressed a wish that he would like to get four years. I'm sure I told him that in my opinion would be out of the question, so at some time as we draw near January 5th the term of nine years came about. I can't say who suggested it or such as that. I discussed the matter or told the chief probation officer of Douglas County that he would plead if this were acceptable, and he probably was subsequently informed that the court had examined his record and that probably would occur, and I

then informed Mr. Shupe of that, and at such time the change in plea took place."

In answer to a question in substance—Did you promise Mr. Shupe that if he would withdraw his plea of not guilty you would arrange a sentence of nine years? Mr. Ryan stated "Putting it in that terminology it was not correct but the idea is there probably." Mr. Ryan also testified that during the course of these talks with Shupe out of the presence of his counsel he told Shupe that if he plead not guilty he would be tried as an habitual criminal, that the penalty without the habitual criminal charge was 2 to 15 years while it was 10 to 20 years, and in discussing possible sentences "indicated to him the—probably the worst—or to expect the worst in his sentence with his record * * *."

The court has set forth the facts in great detail because neither in his experience on the bench nor at the bar has he encountered a comparable situation. Leaving out comment on the fact that statements were taken from petitioner on the operating table when not entirely conscious and recorded by the court reporter, it is undisputed that the prosecutor had several conversations with the petitioner in the absence of his counsel. Admittedly, he endeavored to persuade petitioner that he had no defense and that he should plead guilty and save the prosecutor the trouble of a trial. Admittedly, bargaining took place in the absence of counsel as to the sentence to be imposed. There was evidence from which the court could find, and the court does find, that the plea of not guilty was withdrawn on the promise that petitioner would receive a nine year sentence. The court also finds that there is no direct evidence in this case that the court had any part in the negotiations or acted improperly. There is evidence that the probation officer represented that he had talked to the judge.

█ The standards controlling a plea of guilty were recently set forth in Barber v. Gladden, (D.C.D.Ore.) 220

F.Supp. 308, affirmed 9 Cir., 327 F.2d 101, as follows:

"A plea of guilty must be entered freely and voluntarily and without any coercion. It must be essentially free and unconstrained. The use of threats or promises calculated to deprive a defendant of his freedom of choice is a denial of procedural fairness guaranteed by the Fourteenth Amendment and vitiates a plea of guilty which is so induced. Likewise, defendant is deprived of his constitutional rights if he is deceived or coerced by a prosecutor into entering a guilty plea. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed. 2d 1037 (1961); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Euziere v. United States, 10 Cir., 1957, 249 F.2d 293." (220 F.Supp. 313)

The court went on to state that while the guilt or innocence of the petitioner is not determinative as to his right to have the plea set aside, it is relevant upon the issue of whether or not the plea was in fact coerced.

█ In United States ex rel. Perpiglia v. Rundle, (D.C.E.D.Pa.) 221 F. Supp. 1003 the court pointed out that mental coercion as well as physical coercion can vitiate the validity of a plea so obtained.

The Eighth Circuit in Heideman v. United States, 281 F.2d 805, had before it a motion under 28 U.S.C.A. § 2255. The court, while reversing the judgment of the lower court dismissing the petition without a hearing and sending it back for further proceedings, recognized that the voluntariness of a plea was a question of fact under the circumstances. The court further held that coercion sufficient to set aside the plea of guilty could result from conduct of a prosecuting attorney, and that allegations that a prosecutor declared his intention of treating an offense severely but offering a five

year sentence with the assurance that the recommendation of the prosecutor would prevail in the event a plea was entered, if proven, present facts from which "it can be fairly inferred that pressure by threat and enticement were improperly brought to bear upon the defendants and their pleas were not voluntary."

The facts in this case and the cases cited presented to the court the question of whether Shupe had been presented with alternatives or merely a choice between sentences. It is clear that had he been sentenced as an habitual criminal the sentence could have approached a term of tweny years. It is clear that he was offered a nine year sentence.

This opinion has been delayed because the court vacillated on its conclusion on this issue. It had concluded tentatively, however, and just prior to June 10, 1964, that the plea was not coerced.

On Monday, June 8th the United States Supreme Court filed its opinion in United States v. Tateo, 84 S.Ct. 1587. This case gives indirect approval to Judge Weinfeld's action (see 214 F.Supp. 560) in holding a plea to be coerced when the judge on the fourth day of a trial told defendant's counsel that if Tateo was found guilty by the jury a life sentence would be imposed upon one charge and consecutive sentences imposed on other charges. Tateo was told of the court's position and was advised by counsel that the likelihood of conviction was great. He plead guilty and received total sentences of twenty-two years and six months. Judge Weinfeld felt under the circumstances that the plea had been coerced.

 Whether the court or the prosecutor makes the threats or promises seems immaterial. Assuming the correctness of Tateo and that the plea was coerced, it seems to the court, applying that doctrine to this case, that coercion is present here, and the court so holds. The court so concludes even though petitioner did receive a nine year sentence whereby the agreement he had made was

performed. The fact that the agreement was performed does not transform the plea, which the court holds involuntary, into one that meets the rigorous standards of the Fourteenth Amendment.

Another bothersome question to the court is whether under Anderson v. State of N. C., D.C., 221 F.Supp. 930, Shupe was without effective assistance of counsel during a "critical stage" of the proceedings.

Chief Judge Craven of the Western District of North Carolina, in the cited case, stated:

"It is idle to speculate whether petitioner's counsel could have, if present, worked out a better deal with the Solicitor. The point is Anderson was entitled to have him *try*. For lack of effective counsel at a 'critical' stage of the proceedings against him, those proceedings are constitutionally defective. White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961)." (221 F.Supp. 935)

 The court concludes that for a prosecuting attorney to talk with the defendant in the absence of his counsel and attempt to have him change a plea of not guilty to a plea of guilty and in the absence of counsel to reach an agreement as to the length of his sentence, whether made with or without authority of the court, is to deprive the defendant of the effective assistance of counsel at a time when it was needed.

The petition for writ of habeas corpus will be granted. Issuance of the writ will be stayed for thirty (30) days, within which time the State of Nebraska may either seek review of this decision or determine to proceed against the petitioner by rearraignment on the information so that he may enter his plea and be proceeded against in accordance with the law.

In conclusion, it should be pointed out to Mr. Shupe and the many others who are filing petitions for a writ of

habeas corpus in this court, that it is possible that some may be doing themselves more harm than good. They may not have "nothing to lose and everything to gain" in filing for the "great writ."

On a retrial, if Mr. Shupe is found guilty and sentenced as an habitual criminal, of necessity he will receive a sentence of greater length than the one he is serving since the minimum sentence under the habitual criminal statute is ten years.

It is the right of each person in a democracy to determine the extent to which such person will stand on principle for principle's sake. Commendatory as such a stand is, I want to make certain that each petitioner in the many habeas corpus cases before me understands that there will be cases where the establishment of a principle could result in greater or more severe punishment in terms of length of sentence when the case is again heard in the state court. The federal courts many times would be powerless, if on a retrial a sentence of greater length is meted out than that originally imposed, to alter the sentence so imposed solely on the basis of its greater length.

For many the bright rainbow and the hopes engendered by Fay v. Noia, and the other habeas corpus cases recently decided by the United States Supreme Court, may turn out to be an illusory rainbow with only a "pot of fool's gold" for its seeker.

This court is disturbed not by the philosophy of the United States Supreme Court cases but by the tragedies that are bound to result from their application to the cases of guilty men applying for the "great writ" of habeas corpus who may not fully understand the consequences of securing a retrial on a charge as to which they are not innocent.

The court is indebted to and thanks Mr. Norman Krivosha, court-appointed counsel for Mr. Shupe, for the excellence of his representation.

Ed. note—Mr. Shupe, who in August, 1964 will complete the service of his term

at the prison, after consultation with counsel, and learning that he was to be prosecuted as an habitual criminal, a charge not previously filed against him, filed a motion to vacate the order granting a retrial and to dismiss his petition. Judge Van Pelt sustained the motion, vacated the order and dismissed the case.