Harlan Lynn NOBLE, Petitioner in Error,

v.

Maurice SIGLER, Warden, Nebraska State Penitentiary, Defendant in Error and Respondent.

Civ. No. 539L.

United States District Court
D. Nebraska.

June 18, 1964.

Judgment Affirmed Nov. 8, 1965.

See 351 F.2d 673.

Allen L. Overcash, Lincoln, Neb., for petitioner in error.

Richard H. Williams, Asst. Atty. Gen., State of Nebraska, Lincoln, Neb., for defendant in error and respondent.

VAN PELT, District Judge.

This matter is before the court upon a petition for writ of habeas corpus filed in forma pauperis. Allen L. Overcash, court-appointed counsel for petitioner, is to be commended upon the thoroughness of his preparation and the ability with which petitioner's cause has been presented.

Noble, a man of 52, with an I.Q. of 115 (well above average), is serving sentences for sodomy and kidnapping imposed on December 1, 1959 by the District Court of Lancaster County, Nebraska. He was sentenced as a habitual criminal. The charge set forth acts committed upon a 6-year old girl in Lincoln, Nebraska, on August 1, 1959. Petitioner was originally charged in Lancaster County with a kidnapping offense for which the maximum sentence was the death penalty, and in addition was charged with rape and with sodomy. On the day his plea of guilty was entered and immediately prior to the plea, an amended information was filed to charge a kidnapping offense, which carried life imprisonment as the maximum sentence, and the rape charge, which petitioner has always denied, was dropped and a habitual criminal charge was also filed.

Noble was adjudged insane by the Probate Judge for the County of Leavenworth, State of Kansas, on October 30, 1956. He was at that time serving a life sentence on one rape charge and 10 to 42 years on another and separate rape charge, each charge involving girls under twelve years of age, for forcible rape and kidnapping. He was committed and later placed in the Larned State Hospital at Larned, Kansas. Noble escaped from that institution on June 2, 1959. He has a previous record of sex offenses other than those previously mentioned herein. Without detailing it here, it is sufficient to say that his own testimony shows his depravity.

He was afforded a full hearing on all issues presented to this court. Prior to the hearing counsel submitted briefs to the court covering the issues involved. Because the noted professor of criminology called as a witness on behalf of Noble stated that he is a dangerous man and should not be liberated in the sense of being turned out on the populace, and because this case involved legal problems common to the other cases before the court in which counsel had been appointed and hearings set, the court held up a decision awaiting trial of and final submission of these other cases and the opportunity to further study the issues so well presented by counsel.

Before filing the present petition with this court, petitioner presented two petitions for habeas corpus to the District Court of Lancaster County, Nebraska. The first was filed on December 29, 1961, and was limited to petitioner's allegations that he was being deprived of all medical and mental care. The petition was overruled by order of the District Court on that day, the court holding that it did not state a cause of action. Petitioner filed a notice of appeal within the thirty day period with the Clerk of that court, together with a request that the Clerk prepare a transcript of the proceedings and a bill of exceptions. He included therewith a poverty affidavit and a motion to proceed in forma pauperis.

The second petition was filed with the Clerk on January 31, 1962. That petition alleged, in addition to the grounds presented to the court in the first petition, that petitioner's right to a jury trial was denied, that he was being deprived of legal counsel, that he was mentally ill when he entered his plea to the criminal charge and when sentenced, and that a county court order pertaining to his mental treatment was disregarded. This petition was dismissed by the District Court on the day filed, the court again holding that it did not state a cause of action for issuance of the writ. A notice of appeal, a request for a transcript and bill of exceptions, and a poverty affidavit were filed by Noble within the time allotted.

Both appeals were docketed by the Nebraska Supreme Court, and brief day was set for April 30, 1962. A copy of the rules of the Supreme Court was sent to petitioner, containing the requirement for printed briefs hereinafter set forth. After repeated attempts to obtain assistance in the preparation of briefs and requesting the Supreme Court to appoint counsel for him, he tendered to the court a handwritten document entitled "Brief of Appellant" with two cover sheets and with the numbers of both cases thereon. The document evidences the petitioner's attempt to comply with Rule 8 of the Rules of the Supreme Court as set forth in petitioner's request for admissions, number 37. The brief obviously did not comply with Rule 9 of the Court. The document was returned to petitioner by the Clerk of the Court.

Noble then transmitted the document he prepared and entitled "Brief" to the United States Supreme Court together with a notice of appeal from the action of the Nebraska Supreme Court. These papers were returned to him by the Clerk of that Court together with a copy of the Rules of the United States Supreme Court. Both actions were subsequently dismissed by the Nebraska Supreme Court for failure to file briefs.

The petition for writ of habeas corpus before this court presents several grounds upon which it is contended that the present confinement of petitioner is in contravention of his constitutional rights. He alleges that he was insane at the time of the entry of the amended information and thereafter throughout the proceedings against him until he was confined in accord with his commitment, including the time when he made certain admissions or confessions. He further alleges that his plea and confession, as well as his waiver of extradition, were induced by promises of special treatment. Petitioner contends that he was deprived of counsel in his attempt to avail himself of state post-conviction remedies and was thus denied equal protection of the law; and finally, that he was in fact deprived of his right to appeal the decision of the District Court of Lancaster County, Neb-

raska denying his petitions for writ of habeas corpus because he was a pauper, which action denied him equal protection of the law.

 It is the opinion of this court that petitioner has sufficiently exhausted his remedies in the state courts of Nebraska so as to vest this court with jurisdiction of his claims and satisfy the requirements of 28 U.S.C.A. § 2254. The two petitions for habeas corpus filed in the District Court of Lancaster County, Nebraska, raised the issues of his sanity at the time of his plea, trial, and sentencing. While they did not raise the issues concerning the validity of his plea and confession or the deprivation of counsel during his attempt to avail himself of state post-conviction remedies, in view of this court's discussion of the availability of relief through such Nebraska remedies in Shupe v. Sigler, D.C., 230 F.Supp. 601, and Geaminea v. State of Nebraska, D.C., 206 F.Supp. 308, it is the holding of this court that no such remedy is presently available in Nebraska to provide relief for such claims. It would thus be fruitless to require petitioner to again return to the state courts and seek relief without the aid of counsel. Under Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, petitioner has exhausted his available state remedies, and this court has jurisdiction of his petition.

Petitioner urges that he was denied the equal protection of the law through the interposition of a financial consideration depriving him of his right to appeal the denial of his petitions for writ of habeas corpus by the state district court. Such financial consideration was allegedly interposed by the dismissal of his appeals for failure to file printed briefs in conformity with the Rules of the Nebraska Supreme Court.

The pertinent part of Rule 9 requiring that briefs be printed was as follows:

"9. *Briefs, Printing and Taxation*

a. *How Printed.* All briefs shall be either (1) printed, or (2) reproduced by a duplicating process from copy prepared on a proportional-spacing typing machine, the type of which simulates printing. Both processes will be considered printing. Briefs shall be printed on unglazed white book paper on pages 6½ inches wide and 9½ inches long, trimmed size. The printed matter shall be 4 inches wide and 7 inches long. The type used may be 12 point but not smaller than 10 point, except that exhibits may be prepared in smaller sizes when necessary. Italic type or underscoring may be used on citations.

\* \* \* \* \* \*

d. *Failure to Comply.* The clerk shall refuse to file any brief not prepared in accordance with this rule and shall immediately notify counsel of the objections thereto.

e. *Cost of Printing.* When the parties or their attorneys furnish their printed briefs in conformity to the rules of this court it shall be the duty of the clerk to tax a fee therefor against the unsuccessful party to be collected and paid to the successful party as other costs. Costs shall not be taxed for the printing of a reply brief except such part as is in answer to a cross-appeal, nor for printing briefs unless printed, served, and filed in conformity with the rules of this court. The amount taxed shall not be in excess of $2.40 per page but in no event to exceed the actual cost of printing. Proof of the actual cost of printing shall be submitted to the clerk with the filing of the brief. The total number of pages that may be taxed as costs shall in no event exceed 75."

Rule 15 provided for the dismissal of an appeal by one in default because of failure to file briefs with the court. It is under the provisions of this rule that Noble's actions were dismissed by the court.

Rule 9 has since been amended to read as follows:

"9. *Briefs, Printing and Taxation*

a. *How Printed.* All briefs shall be printed, unless otherwise allowed by the court on good cause shown.

\* \* \* "

There can be no question but that both appeals of petitioner to the Nebraska Supreme Court seeking post-conviction relief were dismissed by that body for failure to comply with the rules of the court with respect to the filing of briefs. However, as previously pointed out by this court in Shupe v. Sigler, supra, the scope of the remedy of habeas corpus in Nebraska is limited to those situations in which the sentencing court lacked jurisdiction over the subject or the offense, or the sentence was outside the power of the court to impose. It is thus apparent that had the Supreme Court granted review of the District Court's summary disposition of petitioner's writs such action, under the court's rulings as to the scope of the writ, would have been upheld. With nothing to gain by petitioner successfully obtaining appellate review of his cause, this court can say only that he has no remedy in Nebraska to exhaust and may now seek vindication of his rights in the federal courts.

Petitioner also alleges denial of equal protection of the law in that he was denied counsel as he proceeded in the state courts seeking habeas corpus relief. He is unable to point to a decision of the United States Supreme Court setting forth that the Constitution requires counsel for indigents in post-conviction proceedings. Such appointments are not made as a matter of course in the federal courts, and this court finds no constitutional right to such appointment in the state courts. Nothing in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, or Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, indicates that the rigorous requirements upon the states to furnish counsel to indigents extends to their pursuit of state post-conviction relief. This court refrains from taking such a position at this time.

Petitioner contends that his plea of guilty, his written confession, and his waiver of extradition were obtained from him by promises and inducements. There can be no question but that a plea involuntary by reasons of threats, coercion or promises does not comply with constitutional standards. See this court's opinion filed June 16, 1964 in Shupe v. Sigler, 230 F.Supp. 601 and cases cited therein. However, the court finds it unnecessary to determine, in the event the confession or waiver of extradition were so obtained, if such would make petitioner's present detention illegal. It is the finding of the court that petitioner has failed to sustain the burden upon him of proving that either the plea, confession or waiver of extradition were so obtained by promises and inducements as to make them invalid.

Noble testified at the hearing that he waived extradition as a result of promises by Capt. Sawden, of the Lincoln Police Department that he would not be mistreated, that he would be sent to a mental hospital, and after recovery would be kept at the University Poultry Farm. He further testified that the jailer in Milwaukee threatened him with turning a radio up very loudly driving him out of his reason and with beatings by fellow inmates.

Noble testified that his court-appointed counsel threatened that unless he pled guilty he would get the "chair" while if he would enter a plea he would be sentenced to life imprisonment. While the attorney was not appointed until after Noble's confession he further testified that similar threats were made by Elmer Scheele, then County Attorney and now a District Court Judge in Lancaster County, Nebraska, to obtain the confession and plea, and that Officer Sawden, C. Russell Mattson, his court-appointed attorney, and Judge Scheele stated he would not be sent to the penitentiary. He also testified that he was told that he had to say to Judge White, the sentencing judge, in effect, that he was not threatened, promised or coerced to plead guilty or confess and sign statements to the same effect.

The only evidence supporting such claims of coercion and promises comes from the petitioner's own testimony. It was not supported, and was in fact contradicted, by the testimony of Mr. Matt-

son, Judge Scheele, and Officer Sawden; nothing was elicited from these witnesses upon cross-examination in any manner to support petitioner's claims.

Furthermore, on page 31 of the statement Noble gave to Judge Scheele, exhibit 40 herein, Noble states that the same is given freely and voluntarily, without threats or promises, and with full realization of the nature of the charges and the penalty involved. Again, Noble stated at his appearance before Judge White when he entered his pleas to the charges against him, as shown by exhibit 35 herein, that he was entering the pleas freely and voluntarily, without any threats, promises or inducements of any kind having been made to him. The court recognizes that he testified at the hearing before this court that he was forced to so state, but is of the opinion that such was not the fact. Judge Scheele in fact testified that no such statements were ever made to Noble. It is the holding of the court that Noble has not sustained the burden of proof upon him relative to this issue, and that the waiver of extradition, the confession, and the plea were in fact free and voluntary, being made without threats, promises or coercion.

The final ground urged upon the court is that he was up to and including the time of his commitment without the mental capacity to understand the proceedings against him, to properly prepare a rational defense, or to appraise his own guilt or innocence of the charges against him, or to assist in his own defense.

It is certain that on October 30, 1956, the petitioner was adjudged in Kansas to be insane. See exhibit 1 herein. He was thereupon placed in the Larned State Hospital, Larned, Kansas, until he escaped from that institution on June 2, 1959. He remained out of the custody of officials until the occurrence of the incident out of which his present confinement results. He was never adjudged to be sane, nor was the previous adjudication of insanity set aside.

■ At the time of the proceedings against Noble in Nebraska in 1959, the officials handling the prosecution and the court were aware of his previous mental condition as shown by exhibits 35, and 38 and testimony at the hearing herein. However, there was no finding made by the state court as to Noble's mental capacity to assist in his defense during the proceedings against him in this state or rationally understand such proceedings against him. Accordingly, in view of the fact that the previous adjudication destroyed the presumption of Noble's sanity and established him to be presumptively insane, Byrd v. Pescor, 8 Cir., 163 F.2d 775, and that no hearing or determination was made by the state courts of Nebraska as to his mental condition, the hearing held herein included within its issues the competence of petitioner to be found guilty and sentenced in the Nebraska proceedings against him. Authority for hearing evidence as to his sanity at the time of the trial is found in Byrd v. Pescor, supra, and Owsley v. Cunningham, (D.C.E.D.Va.) 190 F.Supp. 608.

■ To stand trial one must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and * * * [have] a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824; Feguer v. United States, 8 Cir., 302 F.2d 214, 236.

At the hearing held herein, the state introduced into evidence, exhibit 36 herein, the deposition of Dr. Eberhart Burdzick, Clinical Director of the Larned State Hospital and a psychiatrist. Such testimony established that Noble was diagnosed at the hospital as a schizophrenic reaction, paranoid type. The doctor testified that while at the institution Noble understood what was meant by the particular type of crime he was being held for and which he again subsequently committed, that he was in good contact with reality, and displayed the power of reasoning. The doctor further testified that Noble could have defended or assisted in his defense in a rational

manner against charges similar in nature to those in question while in the institution and that based upon his medical experience he was of opinion that his condition would have remained stable for several months after leaving the institution. He stated on cross-examination that he did not believe that incarceration would tend to worsen Noble's condition.

■ Mr. Mattson, Judge Scheele, and Officer Sawden were all witnesses before this court. All three had numerous contact with petitioner during the interval here under consideration and all expressed their opinion in effect that petitioner was sane, competent, and had the ability to understand and aid in the proceedings against him. While all are laymen, as such they are competent to give their opinion as to the petitioner's sanity during the times in question. See Queenan v. Territory of Oklahoma, 190 U.S. 548, 23 S.Ct. 762, 47 L.Ed. 1175, Craig v. United States (9 Cir.), 81 F.2d 816, In re Estate of Wilson, 78 Neb. 758, 111 N.W. 788, Torske v. State, 123 Neb. 161, 242 N.W. 408, and Henton v. State, 131 Neb. 622, 269 N.W. 116. The court is aware that the rule in Nebraska requires an "intimate acquaintance" before the lay person may testify as to his opinion. However, this court is of the opinion that the acquaintance was sufficient to render each opinion admissible under the teachings of the above cases considering that the length of their acquaintance and closeness of their relationship goes merely to the weight to be given to their testimony.

Mr. Mattson, whom the court knows as an experienced and competent trial lawyer both in the criminal and civil courts, testified that as Noble's court-appointed attorney he spent some six hours consulting with Noble in addition to his appearance with Noble in court for arraignment, plea and sentencing. Mattson testified that Noble fully comprehended the subjects discussed and was alert. He further testified that it was his opinion that Noble fully understood the nature of the crimes with which he was charged and his plea thereto.

Judge Scheele, County Attorney during Noble's prosecution, testified that in his opinion Noble understood the nature of his acts, the difference between right and wrong and that there was no question of his ability to assist in his defense. From an examination of Judge Scheele's testimony there is no question but that he believed that Noble satisfied the requirements of legal sanity during the proceedings against him. Capt. Sawden, the official of the Lincoln Police Department who went to Wisconsin and assisted in returning Noble to Lincoln, and was present during the taking of his confession, testified that while he might have had some question as to Noble's sanity he was able to understand the charges against him and further was able to assist in his defense.

The petitioner called two witnesses on rebuttal. The first, Dr. David Levine, is presently professor of psychology at the University of Nebraska. He examined Noble in November of 1962 and testified that at that time he was very disturbed and possessed of peculiar ideas. It was Dr. Levine's opinion that at that time Noble would not have been able to assist in his defense, understand the proceedings against him and probably could not have appraised his guilt or innocence. When asked if such a person would have been able to understand the proceedings against him or aid in his defense in 1959, Dr. Levine was able only to state that his opinion would be identical with that given for 1962 but much less certain. Dr. Levine diagnosed Noble as a schizophrenic reaction, paranoid type.

The final witness called by petitioner was Dr. James Reinhardt, retired Professor of Criminology at the University of Nebraska. Dr. Reinhardt, who holds an earned degree of Doctor of Philosophy, has done extensive research in the areas of criminal and social psychology. He is well and favorably known by the court. He examined petitioner late in October of 1962 and found him to be an incipient schizophrenic who could not have defended himself or assisted in his defense. Dr. Reinhardt declined to ex-

press an opinion as to Noble's condition at the time of his arrest and throughout the proceedings against him without reliance upon the deposition of Dr. Burdzick. Relying upon his examination and the facts related in the deposition, it was Dr. Reinhardt's opinion that it would have been unlikely that Noble would have worked his way back to reality.

 This court is not called upon to make a determination of Noble's sanity at the time he was before the court in September of 1963. The task is the more difficult one of applying the applicable legal requirements of one's sanity to stand trial to Noble's condition in 1959. The court is of the opinion that Noble's adjudication of insanity made him presumptively insane during the proceedings in 1959 which resulted in his conviction and present confinement. Such presumption placed upon the State the burden of proving his sanity to stand trial. However, in evaluating the evidence before it, this court reaches the conclusion that the State has met the burden of proof and that Noble satisfied the legal requirements of sanity as previously set forth necessary for the proceedings undertaken to be valid. The court is of the opinion that the testimony of Dr. Burdzick projecting his opinion ahead four or five months is of greater value in determining Noble's sanity at that time than the qualified opinions of other experts as to his condition two years prior to the examination which they conducted.

The court also gives more than slight weight to the lay opinions rendered by the three men heretofore named who are competent in their fields of law enforcement and administration and experienced in their connection with criminals and criminality.

It is therefore the holding of the court that Noble during October, November and December of 1959 was able to and did understand the proceedings against him including the nature and seriousness of the offenses of which he was charged and his plea thereto, and had the ability to and did in fact consult with his attorney and assist in his defense. In reaching these conclusions the court has carefully examined the statement given by Noble upon his arrest and the proceedings had against him in the District Court of Lancaster County, Nebraska. The court feels the statement and proceedings generally demonstrate an understanding upon the part of petitioner and comprehension of the proceedings and charges together with his guilt thereto.

The petition for writ of habeas corpus will be denied.